## 2330.   SMITH *v.* BERMAN.

1. Upon the filing of a petition in bankruptcy, followed by an adjudication, all property in the actual or constructive possession of the bankrupt passes into the custody of the bankruptcy court, subject to its exclusive jurisdiction to determine by plenary action or summary proceeding all adverse or conflicting claims with reference thereto.
2. "In this State, notwithstanding his reduced importance as a domestic factor," the husband is still recognized by law as the head of his family, "and though his wife may reside with him, she does not thereby divest his possession of the homestead," nor does her co-residence alone rebut the legal presumption that the house and all the household effects belong to the husband as the head of the family.
3. State courts have jurisdiction against officers of the United States courts, such as marshals, referees, and trustees in bankruptcy, to recover damages for wrongful acts entirely beyond the legitimate scope and performance of official duties.
4. Where, in a suit brought in a State court by the wife of a bankrupt against the trustee in bankruptcy, to recover damages for an alleged trespass by the trustee in the wrongful conversion of personal property to which the wife claimed the title and the right of possession, it appeared, from the evidence, that the trustee was not a trespasser, but was in possession as trustee of the personal property involved in the controversy, the res being in the possession of the court of bankruptcy through its trustee, a verdict should have been directed for the defendant, and the plaintiff left to her remedy in the court of bankruptcy, which, under the law, has exclusive jurisdiction to hear and determine all questions relating to the right of possession and title to the res in its custody.

DECIDED SEPTEMBER 20, 1910.

Action for damages; from city court of Blakely—Judge Jordan. December 10, 1909.

Mrs. Fannie Berman brought suit in the city court of Blakely against H. G. Smith, to recover damages for alleged trespass, and the jury found a verdict in her favor of the sum of $6,000. The cause of action arose on the following state of facts: The defendant, H. G. Smith, was trustee in bankruptcy of Morris Berman, the husband of the plaintiff. Morris Berman filed in the district court of the United States for the northern district of Georgia a voluntary petition in bankruptcy, and on this petition an adjudication was entered January 8, 1909. In his schedule the bankrupt listed

"merchandise debts amounting to $7,461.11, and assets consisting of a stock of goods valued at $3,000," and "household goods and furniture, household stores, wearing apparel and ornaments of the person valued at $150." He claimed an exemption of "the household and kitchen furniture and wearing apparel of himself and wife, all in the house then occupied by him in Blakely, Georgia, and valued at $150," and the remainder of the $1,600 exemption out of the proceeds of any other property belonging to him. January 21, 1909, he amended his schedule, as to his claim of homestead, "by striking therefrom his claim for household furniture, and by praying that his homestead amounting to $1,600 be set apart and allowed to him out of any property belonging to the bankrupt estate." The house in which the bankrupt lived with his wife and child and a relative was rented by him. When the trustee qualified, the wife of the bankrupt was sick, and at the request of the bankrupt the trustee permitted him to remain in possession of the household and kitchen furniture, as there was no immediate necessity for its sale. The merchandise stock of the bankrupt was sold by the trustee at public outcry for $1,580 cash. On investigation the trustee found that on January 7, 1908, the inventory showed merchandise on hand valued at $2,006.84. On January 10, 1909, the inventory of the bankrupt's stock by the appraisers showed that its value was then $3,162.73. No money or other property outside of this stock of goods was ever delivered by the bankrupt to the trustee. His scheduled and other debts being over $7,500, the trustee found no explanation, after diligent search, of the apparently large shortage in the assets of the bankrupt during the year 1908. In 1908 the bankrupt's tax returns included the following item: "Household and kitchen furniture, pianos, libraries, pictures, etc., $200." His wife, Mrs. Fannie Berman, made no return of any property for taxation. Among the bankrupt's bills, invoices, and paid checks the trustee found a number covering purchases by him and payment therefor of household goods and furniture, and he also found that all of this household furniture, including library, pictures, etc., was covered by three policies of insurance which the bankrupt had taken out in his own name. The trustee in the bankruptcy employed as his counsel Glessner & Park, of Blakely, Georgia; and on March 20, 1909, his attorney, Mr. Park, informed him that in passing the bankrupt's house he had observed that the "furniture and

household effects" were being packed up preparatory to shipment, and advised him that in his opinion the bankrupt was preparing to move this furniture to Birmingham, Alabama. The furniture and household goods being the same that had been entrusted to the bankrupt by the trustee as above mentioned, the attorney advised the trustee that he should go ahead and take possession of these effects. At the request of the trustee, his attorney telephoned to the referee in bankruptcy, stating these facts, and asked him for instructions, and in reply to this telephone message the referee directed the trustee to take possession of the furniture and house-hould effects, and stated that to authorize him to do so, he needed no written instructions or other papers, that he was authorized to do so by the fact of his appointment as trustee. Up to this time Mrs. Fannie Berman had made no claim or assertion of title to any of the household or kitchen furniture, and the trustee was therefore advised by his attorney and referee to take possession of all the furniture and household effects which were being packed up and which it was apprehended would be shipped from the State unless prompt action was taken. Following these instructions from the referee and the advice of his counsel, the trustee took with him two young men, one of whom was to check out the personal property at Berman's house and the other to check it in upon its deposit in a warehouse, and repaired to the bankrupt's house for the purpose of carrying out the instructions which had been given him. When he reached the house, he found that the husband, the bankrupt, was not at home, but that the wife was present with a servant, a child, and a neighbor, and the trustee informed her of his mission. The wife objected to the trustee doing anything until her husband came, and at her request the trustee telephoned to her husband to come to the house, and he also called up Mr. Pottle, the attorney for the bankrupt. In a short time the bankrupt and his attorney arrived and both demanded of the trustee his authority for entering the house and taking possession of the effects therein. The trustee replied that his authority was his appointment as trustee in bankruptcy. An altercation took place between the bankrupt and the trustee, the bankrupt taking the trustee by the arm and attempting to eject him from the house, and the trustee becoming angry and using profane language in the presence of the bankrupt's wife. The attorney for the bankrupt also warned the trustee that he would

act at his peril in taking possession of the furniture and effects in the house.   The bankrupt and his counsel left the house, and, after their departure, the trustee informed Mrs. Berman that he would be compelled to take possession of all the household and kitchen furniture as the property of the bankrupt, and she stated to him that all the personal property in the house belonged to her and that nothing belonged to the bankrupt.   The trustee stated that the question of title would have to be passed upon by the court, but that he would not take possession of her wearing apparel, or that of her child and husband.   There was a trunk in the house and the trustee asked Mrs. Berman what the trunk contained, and she stated that it contained only wearing apparel for herself and child.   The trustee refused to take her word, and asked to be permitted to see in the trunk.   Permission was refused by her, and after some controversy, in which she testified that the trustee used offensive and insulting language to her, the trunk was taken possession of by the trustee, and, not being able to obtain the key to the trunk from her, the trustee carried the trunk to a locksmith and had it opened, and in it found concealed in some clothing a man's leathern wallet containing $1,940 in bank bills..  After the trunk had been opened and the money found, Mrs. Berman stated for the first time that this money was her property; that it had been given to her in part by her relatives when she married in 1907, and that $600 of it had been paid to her by a former employer, being the amount of her wages which she had saved; that she had kept this money in her trunk all this time, except that she had loaned to her husband about $1,000 of the money, which he had paid back from time to time.   The money was deposited by the trustee to his credit in the bank, and the trunk, with all the other articles therein, was returned by the trustee to the wife, who at first refused to accept it without the money, but subsequently did so.   The furniture was removed by the trustee from the house and stored, some was left in the house and the house locked by agents of the trustee; but in a few days thereafter the house was delivered to the bankrupt by the trustee, with a large amount of the personalty still therein.   On March 21, 1909, Mrs. Fannie Berman filed a petition in the United States district court, claiming that this sum of $1,940 in currency "was gotten and accumulated by her at and prior to her marriage in May, 1907, and kept by her since that time in that shape; that she can not assert

her claim to the specific money in the court of bankruptcy, because the trustee has deposited it and it has become commingled with other currency; that she is about to file in the city court of Blakely a suit to determine her title to said money, 'so that she may have the proper basis upon which to seek necessary relief in the court of bankruptcy,' and that unless this court will enjoin the trustee from paying out and distributing the money, she is in danger of loss." She prayed for an injunction to restrain the trustee from disposing of the money and household furniture. Judge Newman, of the United States district court, upon considering the petition, passed an order, on March 22, 1909, "that the defendant, H. G. Smith, trustee, be . . enjoined and restrained as prayed in the petition, until the matters to which said petition relates can be brought before and passed on by B. T. Castellow, the referee in bankruptcy, and heard and determined, all of said matters being hereby referred to the said referee to be passed on by him as such referee." On the day on which this order was passed Mrs. Berman filed in the city court of Blakely her suit against the defendant, H. G. Smith, for the recovery of $1,940, the value of the money claimed by her and alleged to have been wrongfully converted by the defendant. On March 25, 1909, Mrs. Berman filed another suit in the city court of Blakely against H. G. Smith, for the recovery of the value of the furniture, etc., taken from the house, alleging the value to be $1,000, and also filed the present suit, in which she sought to recover the $1,940 in money, which she alleged belonged absolutely to her, and $1,000, the value of the furniture taken possession of by the trustee, alleging that both the money and the furniture were wrongfully converted by the defendant; and sought to recover, in addition to these actual damages, punitive and exemplary damages for the tortious acts of the defendant in connection with the trespass and conversion, setting out in her petition, in substance, all the foregoing facts as a basis for recovery.

On March 30, 1909, the trustee in bankruptcy filed a petition in the bankruptcy court, setting forth the status and the different suits and prosecutions brought against him, he having also been indicted by the grand jury of Early county for using profane language in the presence of a female and for forcible entry and detainer; and he prayed for an injunction against these suits and prosecutions, and that the entire subject-matter of controversy be

referred to the referee for decision. On this petition the following order was passed: "Upon reading and considering the foregoing petition, it is ordered that Fannie Berman be and she is hereby enjoined and restrained, as prayed in the petition, from proceeding further with the prosecution of the civil suits referred to in the foregoing petition, or from instituting others of like character against H. G. Smith, on account of his acts as trustee in bankruptcy for Morris Berman, until the matters to which said petition relates have been passed upon by B. T. Castellow, referee in bankruptcy. In open court, this 30th day of March, 1909. Wm. T. Newman, U. S. Judge." · On April 30, 1909, Mrs. Berman filed a petition to Judge Newman in the court of bankruptcy, alleging the pendency of the three suits above mentioned, in the State courts, setting forth the order by which the dispute was referred to the referee for decision, and complaining of delay in the determination thereof, and asking that the restraining order theretofore granted be dissolved; and on July 31, .1909, Judge Newman filed an elaborate opinion in the case, reviewing the various suits and matters in litigation and the authorities bearing on the case (Berman *v.* Smith, 171 Fed. 735), and passed the following order: "After argument had upon the foregoing matter, and upon consideration thereof, it is ordered and adjudged that as to the suit in the city court of Blakely to recover $1,940, and as to the suit to recover furniture and other personalty, an injunction be granted, restraining Fannie Berman from the further prosecution of same. And as to the suit for $10,000 damages an injunction is denied, and the restraining order heretofore granted dissolved. Wm. T. Newman, U. S. Judge." Thereafter, at the August term of the city court of Blakely, the suit for damages was tried, and all the foregoing facts were in substance shown by the evidence, and a verdict in behalf of the plaintiff was rendered.

The defendant first demurred to the petition as amended, and this demurrer was overruled and exceptions pendente lite were duly preserved. The defendant then filed a plea to the jurisdiction of the State court, alleging in substance that the United State court alone had jurisdiction to determine the questions made by the petition. The court found against this plea, and to this judgment exceptions pendente lite were filed. The defendant then filed a plea in abatement, setting up the pendency of the former suits against

him for the recovery of the $1,940, and the value of the furniture alleged to have been wrongfully taken possession of by the defendant. To meet this plea the plaintiff took an order dismissing the suit for the recovery of the personalty, and the court granted the order of dismissal and then sustained a demurrer to this plea, and exceptions pendente lite were filed. The case then went to trial on the merits, when the facts heretofore stated were shown by the evidence, and a verdict was returned for the plaintiff. The defendant filed a motion for a new trial, which was overruled, and he excepts to this judgment. The motion for a new trial contains, besides the general grounds, 57 special assignments of error. In the view entertained by this court of the controlling questions in this case, it will not be necessary to consider and determine many of the assignments of error, and we will therefore decide only those which we deem essential to a determination of the substantial questions involved. Pretermitting any discussion on the many incidental and collateral questions raised by the record, we prefer to confine the opinion of this court to the merits of the controversy.

*Smith, Hammond & Smith, W. F. Weaver,* for plaintiff in error.

*Hawes & Pottle, Spencer R. Atkinson, Jesse W. Walters & Sons,* contra.

HILL, C. J. (After stating the foregoing facts.) · The conduct of the defendant relied upon by the plaintiff as constituting a trespass may be condensedly stated as his acts in entering the house without warning and in the absence of the bankrupt, taking possession of the house and the household effects therein, and taking possession of the trunk, removing it from the house, having it opened, and taking therefrom the $1,940 in currency. The plaintiff claimed that the house was her home, which the trustee had no right to enter; that the household effects and the money belonged to her, and the trustee had express notice of her title; and she insists that the acts and conduct of the trustee above stated were tortuous and entitled her to damages,—not only to actual damages for the value of the property which it is alleged the trustee unlawfully took possession of, but also to punitive and exemplary damages arising from circumstances of aggravation in connection with the alleged trespass. The pivotal question, therefore, around which every other question revolves, and upon the decision of which depends the right of recovery, is: In whom was the right of possession, at the time the

house was entered, of the property seized by the trustee? If the right of possession, under the law and the facts, was in the trustee in bankruptcy, it is clear he could not have been guilty of any trespass in asserting that right. If the right of possession was in the plaintiff, of which fact the trustee had notice either actual or constructive, and he nevertheless disregarded that right and violated it, he was guilty of trespass and should be responsible to the plaintiff for the wrongful conversion of her property; and if the jury believed that there were circumstances of aggravation, either in act or intention, in the commission of the tort, she would also be entitled to punitive or exemplary damages. It is admitted that the defendant was not acting in his individual capacity, but was acting as trustee in bankruptcy for Morris Berman, the husband of the plaintiff. It is admitted that he was duly appointed as such trustee on a voluntary petition in bankruptcy, on which there had been an adjudication, and that he had given bond and had qualified as such trustee. Under the provisions of the bankruptcy law, upon the filing of a petition in bankruptcy, followed by an adjudication, all the property in the possession of the bankrupt of which he claims ownership passes into the custody of the bankruptcy court, subject to its jurisdiction to determine by plenary action or summary proceeding all adverse or conflicting claims. White v. Schoerb, 178 U. S. 542 (20 Sup. Ct. 1007, 44 L. ed. 1183) ; In re Schermerhorn, 145 Fed. 341 (76 C. C. A. 215, 16 Am. Bankr. R. 507). As is said by the Supreme Court in the White case, supra: "Property in the actual possession of the bankrupt on the day his case is referred to the referee in bankruptcy thereby becomes property in the lawful possession of and custody of the referee in bankruptcy, and of the bankruptcy court, whose representative and substitute he was." "In short, the adjudication operates as a seizure of all the property of the bankrupt, by which it is taken in custodia legis . . . The possession of the bankrupt, without more, is transferred to the trustee. No demand for the surrender and possession of the bankrupt's property is necessary." 2 Remington on Bankruptcy, § 1807, pp. 1101, 1105, 1106, 1107. On page 1107 of this work the learned author states that "possession of the bankrupt may give jurisdiction to the bankruptcy court, even if the possession is not exclusive, and regardless of the capacity in which he holds, whether in his own right or as agent for another." And again, "The trus-

tee's right summarily to seize the property found in the possession of the bankrupt or his agent, or in the possession of one not claiming any beneficial interest in it, or to get an order from the bankruptcy court requiring the surrender, is not affected by the fact that liens in favor of third persons exist on the property, or that third persons, not themselves in possession, are laying claim to the property, for the property is brought into the bankruptcy court subject to all liens and claims, and the rights of lienholders and claimants will be fully protected, and can be worked out through the machinery of the bankruptcy court." Idem, § 1816, p. 1113. It is clearly deducible from the above authorities that the title to all the property in the actual or constructive possession of the bankrupt at the date of the filing of the petition, followed by an adjudication, becomes ipso facto vested in the trustee in bankruptcy when appointed and qualified, subject to be administered by the bankruptcy court for the benefit of all claimants, lienholders, and creditors. Being vested with the title, the trustee is not only authorized by the statute to take possession of all the property in the actual or constructive possession of the bankrupt, but it is his imperative duty to do so. The question, therefore, recurs: In whom was the right of possession of the personal property in question and the house in question when the trustee entered the house and took possession of the personal property found therein? If the bankrupt had the custody or possession of the property when he filed his petition, it follows as a corollary that the trustee in bankruptcy had the right, under the plain provisions of the bankruptcy law, to enter the house and take possession of the property therein, notwithstanding any adverse claim as to title set up by a third person. In other words, if the right of possession was in the trustee in bankruptcy, he had the right to take the property into his possession, and the title to the property was not affected by his possession, but the possession in the trustee was subject to the title to be subsequently determined by the proper tribunal. A general principle of law well settled in this State is pertinent at this point, and, when concretely applied, would seem to be controlling. "In this State the husband is the head of the family." Civil Code of 1895, § 2473. "Possession by the husband with the wife, he being the head of the house, is presumptively his possession." *Broome* v. *Davis,* 87 *Ga.* 584 (13 S. E. 749). "In this State," declares Chief Justice

Bleckley, "notwithstanding his reduced importance as a domestic factor, the husband is still the head of his family, and though his wife may reside with him, she does not thereby divest his possession of the homestead, and make the possession her own." *Broome* v. *Davis,* supra. "When husband and wife live together upon land, the possession is presumptively in him as the head of the family, and such joint residence would not alone be sufficient to give notice of any claim of interest in the land by the wife." *Garrard* v. *Hull,* 92 *Ga.* 787 (20 S. E. 357). These decisions establish the doctrine that when husband and wife live together, the house in which they live and all property in the house, are in the legal possession of the husband as the head of the family, and presumptively the title to such property is also in the husband. The question of title, however, is not important, as possession is the determining factor in every case of this character. In the present case the trustee in bankruptcy is not compelled to invoke the general principle just considered, because the facts proved would seem fully to have justified his official conduct. Of course, when we say official conduct we leave out of consideration, as immaterial and irrelevant, the mere manner or method in which he asserted his rights as an official. It is conceded that the house was rented by the bankrupt at the time of his bankruptcy, and was in his possession under a rental contract when the adjudication in bankruptcy was made. The trustee was therefore entitled to the possession of the house for the remainder of the term of the lease, whatever it may have been. Chambers *v.* Calder & Co., 98 Fed. 865; 2 Remington on Bankruptcy, 1118. It is conceded that the bankrupt had scheduled his household goods and had claimed them as the head of the family, and that the goods so scheduled and so claimed were in the house when the trustee entered and took possession. It is shown, by the undisputed evidence, that the house and the household effects had been left in the possession of the bankrupt by the trustee because of the sickness of the bankrupt's wife. The plaintiff, the wife of the bankrupt, made no claim, prior to the seizure of the household goods by the trustee, to any part of the household goods; nor at the time of the seizure of the household goods did she make any specific claim to any part of them; nor did she at that time notify the trustee that there was any money in the trunk which was in the house, or that she claimed title to any money therein. The money

was subsequently found concealed in the trunk, and it was only after the trunk had been seized by the trustee and opened and the money found therein, and the trunk, with the wearing apparel of herself and child, returned to her, that she made claim to the money.    Without extending the discussion, we conclude that the house, the household furniture, and the trunks in the house were all legally in the possession of the bankrupt at the date of the adjudication, and that at the date of the alleged trespass by the trustee all this property was held by the bankrupt by the permission of the trustee, and simply as the agent of the trustee.    In other words, the trustee, instead of being a trespasser, was endeavoring to assert and maintain his possession of the property which presumptively belonged to the bankrupt and to which the trustee was entitled by virtue of his trust, and of which he had previously taken constructive possession when he left the bankrupt in the actual possession thereof.    The trustee in bankruptcy, not being guilty of any trespass against the rights of the plaintiff in connection with the matters charged against him, could not be legally liable in damages to her.    Under the facts of this case and the law applicable thereto, we are satisfied that "there is not enough in the suit, independently of the effort to recover the $1,940 and the personal property, to make a case for damages."    And it follows that with the question of trespass and the right to recover damages eliminated, there only remains in the case the claim of the plaintiff's ownership of the money and the other personal property which the trustee is alleged to have wrongfully converted by his seizure.    This question of title is, in our opinion, under the evidence and the law, cognizable only in the bankruptcy court.    As stated by Judge Newman in this very case, "The suit is in effect a proceeding to recover the property in the possession of the trustee."    This personal property, having been taken possession of by the bankruptcy court through its lawfully appointed trustee, is thereby withdrawn from the jurisdiction of all other courts.    The court, having possession of the property, has exclusive jurisdiction to hear and determine all questions respecting the title, possession or control of the property.    Wabash R. Co. *v.* Adelbert College, 208 U. S. 38 (28 Sup. Ct. 182, 52 L. ed. 379).    See opinion of Mr. Justice Moody in Murphy *v.* Hofman Co., 211 U. S. 562 (29 Sup. Ct. 154, 53 L. ed.

327), where the learned Justice collates the decisions bearing on, the question, and deduces from them the proposition that when the court of bankruptcy, through the acts of its officers, such as referees, receivers, or trustees, has taken possession of the res as the property of the bankrupt, it has ancillary jurisdiction to hear and determine the adverse claims of third persons to it, and that its possession can not be disturbed by the process of another court. The foregoing opinion is not at all in conflict with the rule that an action may be brought in the State courts to recover damages for wrongful acts of officers of the bankruptcy court, clearly beyond their duty, to the prejudice of third persons. Berman v. Smith, 171 Fed. 735, and cases cited. We are clear that the evidence in the present case does not make this rule applicable, for here the trustee in bankruptcy was guilty of no wrongful act, as we have endeavored to show, in taking possession of the property in controversy, but was only in the exercise of his duty in the premises. The plaintiff's title to the property can be fully determined by the court of bankruptcy where the matter was duly referred by Judge Newman, and where such matters are properly cognizable. That court has lawful possession of the res, and its officer, the trustee in bankruptcy, is under bond to deliver the property to the plaintiff, if she proves her title and if the court decides in her favor.

We conclude that when it appeared from the facts proved before the trial court that there was nothing in the suit but the question of title to the res, which was in the rightful possession of the bankruptcy court, and that the defendant was not guilty of trespass, a verdict should have been directed for the defendant, and the plaintiff left, without prejudice, to pursue her remedy in the court of bankruptcy, to recover therefrom the res to which she claimed title.                                         *Judgment reversed.*

RUSSELL, J., concurring specially. Errors in the charge of the court (which are not referred to in the opinion, but as to the quality of which we all agree) require the grant of a new trial; and hence I admit that there must be a reversal of the judgment refusing a new trial. However, I do not assent to the reasons upon which the reversal is predicated. Conceding that the State court has no jurisdiction to adjudicate the title, or right of property, as against the bankrupt, and that if the bankrupt had even a constructive possession of the personal property in question it would

be and become the posession of his trustee in bankruptcy, I do not think the testimony required the jury to find any such constructive possession. On the contrary, I think there is sufficient evidence to have authorized the jury to find that the trunk and its contents were in the possession of the plaintiff at the time it was taken from her by the defendant, who happened also to be trustee in bankruptcy, and not in the possession, either actual or constructive, of her husband. I think the evidence authorized the conclusion that the money which was taken from the trunk was the plaintiff's, and I am clearly of the opinion that it was within the power of the jury to award the plaintiff punitive damages, in addition to the general damages consequent upon her being deprived of the possession of her money. The jury were not required to find the trunk was in the possession of the bankrupt. While the furnishings of a home are presumptively in the possession of the husband as head of the family, the wearing apparel of a wife need not be treated as even constructively in the possession of her husband. Certainly there is no presumption that a wife's clothing is not her own. In the absence of any evidence to the contrary, a satchel or a trunk which contains a married woman's garments, in my opinion, is to be treated merely as the receptacle which segregates the wife's indispensable belongings from other household effects over which, presumptively, her lord and master exercises dominion. It is to be treated as a mere wrapping which aids to maintain a portion of that privacy to which every female, married or single, is entitled. I think the seizure and entry into the plaintiff's trunk, even by a trustee in bankruptcy, could be adjudged to be a trespass, and that it was for the jury to say whether the circumstances of the case were such as to call for the allowance of punitive damages.

POWELL, J., concurring specially. I agree with the Chief Judge in the main, but do not go quite so far as he does as to some of the salient points of the case.

There is no question that the trial court's jurisdiction in this case rests on possession, and not on title. The petition presented a prima facie case of possession unlawfully invaded by the trustee in bankruptcy, and was not subject to demurrer; the question is, how far did the proof sustain the petition?

In order for the plaintiff to recover, it was necessary for her to show not merely that she had title to the personal property, but

also and specifically that she held possession of it exclusively of her husband, the bankrupt, and that the trustee in bankruptcy invaded this exclusive possession. The State court has no jurisdiction to settle the title of the property in a suit against the trustee in bankruptcy; but if the trustee, in the attempt to discharge his duties, violates an actual possession of property lawfully held by an adverse claimant, he ·can be held liable in a State court for the trespass—the violation of the possession being the gist of the trespass.

Under the bankruptcy act, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), as construed by authoritative decisions, all possession of property held, actually or constructively, by a bankrupt, at the time of the filing of the petition, passes to the bankruptcy court and confers on it exclusive jurisdiction to settle contests as to the ownership. So that the possession of the bankrupt becomes the possession of the trustee in bankruptcy whenever the latter qualifies—the possession of the trustee being constructive or legal possession until he reduces the property to his actual detention and corporeal control.

In the case at bar, therefore, if the bankrupt, at the time of the adjudication, had the possession (actual or constructive) of the property involved, the subsequent transaction which gave rise to the present action was not a taking of possession by the trustee, but the mere retention and enforcing of a possession which in the eye of the law he already had.

As to the house, and as to the household furniture, it is clear that the bankrupt had the possession, and that the possession passed to the trustee. The court plainly erred in submitting to the jury any right of the plaintiff to recover because the trustee went into the house (though the plaintiff, being the wife of the bankrupt, was using it as a home), or because he took the furniture, irrespective of whether in point of fact it was the wife's furniture or not.

As to the money: While the husband is prima facie in possession of the family home, where he and his wife jointly reside, and of the things located therein, yet this presumption is rebuttable. A wife may, even as against her husband, maintain such exclusive corporeal control of property that he will not in law be regarded as having possession of it, either actual or constructive. In this case, if the plaintiff, notwithstanding she was the wife of the bankrupt and notwithstanding she resided in the house with him,

had exclusive physical control and detention of the trunk and the money, her possession would be such as to make the defendant's act in taking the trunk and the money away a trespass, provided, of course, the trunk and the money did not in fact belong to her husband. Compare Pollock & Wright on Possession, 38, 40. I think, therefore, that so far as the money was concerned (the trunk and the remainder of its contents having been returned), the plaintiff might recover in the State court; and my associate, Judge Russell, concurs with me in this view.

As to the punitive damages I am inclined to agree with Judge Hill. The alleged invasion of the house and the seizure of the household goods being out of the case, for lack of jurisdiction in the State court, the question is, did the defendant's act in taking and keeping the money indicate such wantonness as to authorize the assessment of punitive damages? I think not. Any prudent man under similar circumstances would have kept it till the title to it could have been decided; and it must be remembered, so far as the mere taking of it is concerned, that the defendant did not even know that there was any money in the trunk when he took and carried it away from the defendant's possession. It is true that the trustee and the bankrupt had an altercation in the presence of the plaintiff, and that in the course of it the defendant used profane language to the bankrupt, but this was a separate affair and not a part of the damage of taking the trunk and the money, which the trustee did not even decide to take until after this altercation was ended. Besides, it is impossible for an impartial mind to overlook the glaring fact that the bankrupt and his wife were acting very suspiciously and in apparent bad faith. The money and the furniture may have belonged to the plaintiff (personally, I think that the money and most of the furniture probably did belong to her), but, with all that, there are many things which would have fully justified the trustee in believing that the property belonged to the estate in bankruptcy and that the plaintiff and her husband were about to move it away to another State. However, as the question of punitive damages is dependent purely on the facts, which may vary in the different trials, we deem it unnecessary to make an authoritative ruling on this point at this time.

The judgment of the court below must be reversed, but I concur specially upon the points mentioned above.