30105. RAWLINS *v.* THE STATE.

DECIDED NOVEMBER 26, 1943. REHEARING DENIED DECEMBER 13, 1943.

*C. G. Battle,* for plaintiff in error.

*O. L. Long, solicitor,* contra.

MacINTYRE, J. 1. The defendant was charged in two counts with the violation of the lottery law, the material parts of which were as follows: Count 1 charged and accused C. C. Rawlins with the offense of a misdemeanor, for that the said C. C. Rawlins, on the 20th day of July, 1942, in the County of Bibb, "did then and there unlawfully keep, maintain, employ and carry on a certain scheme or device for the hazarding of money, said scheme and device being known as and called, 'the bug,' contrary to the laws of said State, the good order, peace, and dignity thereof." Count 2 charged and accused him with the offense of a misdemeanor, for that on the 20th day of July, 1942, in the County of Bibb, he "did then and there unlawfully sell, offer for sale, procure, and furnish to certain persons for money certain numbers and combinations of numbers, representing a chance in a certain scheme and device known as 'the bug,' by which the winning numbers are taken from the reports of the New York stock and bond markets, taking the total receipts of a particular day, contrary to the laws of said State, the good order, peace, and dignity thereof." The evidence showed that there was being operated in Bibb County, a lottery known as the "number game," and further described how the "number game" was played. The "number game" has been fully described in *Cutcliff* v. *State,* 51 *Ga. App.* 40 (179 S. E. 568), and other cases, and we deem it unnecessary to set out at length the evidence describing it in the instant case. The evidence further showed that on July 20, 1942, officers W. L. Robertson and John Gibson, deputy sheriffs of Bibb County, raided a place on the Clinton road operated by a negro named Clyde Barrett. At the time of the raid, the officers found Clyde Barrett and eight other negroes in a room adjoining a restaurant operated by one, Annie Dean, the mother of Clyde Barrett. The negroes were sitting around a table,

and each negro had a stack of lottery tickets and money in front of him. Clyde Barrett was checking the daily receipts of the lottery pick-up men. The officers also found adding machines, money wrappers, cases of unused lottery books, and other paraphernalia and records showing the operation of a lottery. They took from the table, around which the negroes were sitting, approximately $300, most of which was in small change. They also took from the personal possession of several of the negroes a total of approximately $4000. All of the paraphernalia, together with the cases of unused lottery books, were brought in by the officers to be used as evidence. These had the name "C. C. Rawlins, 963 Sells Ave. S. W., Atlanta, Georgia," on them, and, together with the paraphernalia, were introduced in evidence. Clyde Barrett testified that he was operating the place, and had pleaded guilty to the offense of maintaining a lottery and selling lottery tickets; that he had received a long-distance telephone call daily from Atlanta, and was given the winning "bug number" taken from the total sales of the stock market and bond market of that particular day; that these calls came in every day at approximately the same time, to wit, about 3:30 or 3:50 p. m., except on Saturdays, when they would come in about 12:30 or 12:45 p. m.; that he kept his pick-up men together in the room until he received the telephone call, and after receiving the call, he checked over the day's receipts to pick out the winning numbers for the day, which enabled him to pay off the winners on the same day that they had played the lottery. The evidence further showed that subpœnas duces tecum were issued to the Southern Bell Telephone Company, and that there was produced in court a record of all long-distance telephone calls to telephone number 8178-J; that this telephone was in the name of Annie Dean, the mother of Clyde Barrett; that the records of the telephone company showed that the calls came from Atlanta, Raymond 1745, and that the name of the person putting in said calls was "Rawlins;" that on August 15, 1942, officers W. L. Robertson and J. C. Calhoun, deputy sheriffs of Bibb County, in company with Lt. M. B. Petty and W. G. Dinsmore, detectives of the City of Atlanta, and Charles S. Stewart, indictment clerk of solicitor-general John Boykin's office in Atlanta, went to the home of C. C. Rawlins, at 963 Sells Ave., Atlanta, with a search warrant. The officers testified that they found in the home of C. C. Rawlins

eighteen full cases of blank lottery tickets, and one case of about thirty blank or unused lottery books with the name "C. C. Rawlins, 963 Sells Ave." on each case, the name and address on the cases and the type of lottery books being the same as those found in the establishment operated by Clyde Barrett in Bibb County. Some of these books were introduced in evidence. They also discovered, and the records of the Southern Bell Telephone Company disclosed that "Raymond 1745" was a telephone registered in the name of C. C. Rawlins. They also discovered on a table in his home, next to a telephone, two monthly statements from the Southern Bell Telephone Company addressed to C. C. Rawlins; one showed that the charges for telephone, Raymond 1745, were $31.75 for the preceding month; the other was for telephone, Raymond 1787, and showed that the charges for services on that telephone were $25.11. These two statements were introduced in evidence on the trial of the case. The officers testified further that while they were in the home of C. C. Rawlins, the telephone rang a number of times, and that the persons calling were inquiring as to the winning "bug number" for the day, both on the stock market and on the bond market. One of the officers testified that he recognized the voices of well-known lottery operators of Atlanta, and named them. The evidence further disclosed that all long-distance telephone calls made from Raymond 1745 to Macon 8178-J were charged to the Macon telephone, and paid by Clyde Barrett, the operator of the lottery in Bibb County. It was also shown by Clyde Barrett that he had no other regular daily long-distance telephone calls over that telephone. Annie Dean, the mother of Clyde Barrett, in whose name the telephone was listed, testified that she received no long-distance telephone calls regularly. The records of the company disclosed that the only daily long-distance telephone calls to the Macon telephone of Clyde Barrett were from Raymond 1745. Clyde Barrett testified that it was by these calls that he received the information as to the winning "bug number" each day, and paid off on this information. The officers testified that there were two telephones in the home of C. C. Rawlins at 963 Sells Ave., one showing the number, Raymond 1787, and the State introduced in evidence the contract signed by C. C. Rawlins, with the Southern Bell Telephone Company for this particular number, and his signature was identified by his son, W. C. Rawlins. This contract

showed that this number was a "non-published" number. The evidence further showed that the house next door to C. C. Rawlins, No. 967 Sells Avenue, was owned either by Rawlins or his wife, and that telephone Raymond 1745 was located in that house. The court admitted in evidence a contract for Raymond 1745, similar to the one signed by C. C. Rawlins for Raymond 1787, the only difference being that the contract for Raymond 1745 was not signed. In the place for the signature of the applicant for said number appeared the number "5202." R. B. White, a witness for the State and manager of the Macon office of the Southern Bell Telephone Company, and the person who produced the records on the subpœnaes duces tecum, testified: "This form number '5202' is a form we send a customer when we take an application over the telephone, where the customer does not necessarily come to the office to sign for service. For residences, we can take orders over the telephone and confirm it by the form to us that we have the correct name and address. 'Non-published' means we shall not publish the number to the public; that it will not be listed in the directory, nor be given out by 'Information;' but the customer himself can give it out if he chooses to whom he chooses. The telephone company does not publish it or give it out either." The State introduced a statement or bill from the Southern Bell Telephone Company addressed to C. C. Rawlins, 963 Sells Avenue, for telephone services to Raymond 1745. The State had two long-distance telephone operators from Atlanta as witnesses on the trial of the case. Mrs. Clara Elmore testified that she was known as long-distance operator number 249, and that she had handled some of the long-distance telephone calls from Raymond 1745, Atlanta, to telephone 8178-J, Macon. She identified some of the toll tickets introduced in evidence as being the calls she had handled. Mrs. Mary Albright testified that she was known as long-distance operator number 382, Atlanta, and that she had handled some of the long-distance telephone calls from Raymond 1745, Atlanta, to telephone 8178-J, Macon. She identified the toll tickets that she had made. It should be noted that the operators' testimony was that the calls were made at the close of the market each day, and that the conversations lasted from fourteen seconds to thirty seconds; that the notation "8 Seq." on the toll tickets was explained by the operators as meaning that the person putting in the call

from Raymond 1745 put in eight long-distance calls at one time. This means that a person can call a long-distance operator and get numbers in more than one town at a time, and talk to each person as fast as the operator contacts them. .The length of the conversations indicated that it was just long enough to call out the "bug" numbers. Officer Dinsmore testified that one morning after the arrest of the defendant he talked to him on Hemphill Avenue, Atlanta, in a "bug" hang-out and at that time the defendant opened the back of his car, and he had three or four cases of books in there; that he said "he had lost some tires off of another one of his cars, and was asking me to help him find them, and during the conversation he asked me, 'Do you see any harm, where they could convict me in Macon because I furnished the numbers to them?' and I told him I didn't know whether they could or not. That was the only conversation I had with him pertaining to this case, other than did I think there was anything wrong in him telephoning the numbers to them." The officers for the State testified that the lottery books found in the home of the defendant were the kind used in the operation of a lottery; that they had seen the same books and forms used by the operators of lotteries in Macon, Bibb County, Georgia, and in Atlanta, Fulton County, Georgia. They testified that the books were manufactured for that purpose; that the same type books found in the home of the defendant were found in the lottery headquarters of Clyde Barrett in Bibb County. The cases found in the lottery headquarters of Clyde Barrett in Bibb County had the name and address of C. C. Rawlins on them.

We think that the evidence authorized the jury to find that Barrett, whose place was raided by the officers, and where all the lottery paraphernalia was found, and the defendant associated themselves in a joint unlawful enterprise, to wit: "Keeping, maintaining, and operating a lottery," and also selling and offering for sale certain numbers representing a chance in a lottery. The acts of Barrett were done in pursuance and furtherance of the conspiracy, and were in contemplation of the law, the acts of both, notwithstanding the fact that the defendant may not have been actually present. "Conspiracy or common intent may be established by proof of acts and conduct, as well as of previous express agreement." *Davis* v. *State,* 114 *Ga.* 104 (39 S. E. 906); *Adams* v. *State,* 51 *Ga. App.* 30 (179 S. E. 417). In short, the evidence authorized the verdict finding the defendant guilty under both counts.

2. The assignments of error based on the admission of testimony regarding knowledge of witnesses as to how "number games" operate, the knowledge being derived from others rather than from personal experience, are without merit. *Andrews* v. *State*, 56 *Ga. App.* 12 (192 S. E. 73) ; *Hodges* v. *State*, 64 *Ga. App.* 328 (13 S. law, did not show in any way that the defendant was connected with these unlawful acts, are without merit, since we have, in division 1 of this opinion, held that there was a conspiracy, and that the acts of Barrett, done in furtherance of the conspiracy, were the acts of Rawlins, though he may not have been actually present. E. 2d, 90).

3. The various assignments of error based on the ground that evidence though admissible against Barrett, the actual perpetrator of the unlawful acts which constituted a violation of the lottery

4. The testimony of the telephone operators who handled the telephone calls from the defendant's telephones to the telephone of Barrett, as well as the telephone slips put through by them, were admissible.

5. None of the other various objections made by the defendant to the evidence show reversible error.

6. The defendant objected to the introduction in evidence of the paraphernalia found in the house of Barrett in Macon, which tended to show that Barrett was carrying on a lottery there, and that tickets were being sold, or were being offered for sale, in connection with the same, on the ground that, while the evidence might have shown that Barrett was connected with the lottery, it did not show in any way that the defendant was connected with it. We think that when all the evidence is considered, it shows a conspiracy in which the defendant was engaged with Barrett and others in conducting a lottery; that the defendant, having entered in the conspiracy already formed, is deemed, in law, a party to all of the acts done in the prosecution of the enterprise of conducting a lottery. *Daniels* v. *State*, 58 *Ga. App.* 599, 606 (199 S. E. 572). The evidence was admissible, and the ground is without merit.

7. The defendant seems to take the position that since the telephone bills were not found in his physical possession, they are not admissible. "In this State the husband is recognized by law as the head of the family, and, where he and his wife reside together,

the legal *presumption* is always, and not generally, that the house and all the household effects belong to the husband as the head of the family. *Broome* v. *Davis,* 87 *Ga.* 584 (13 S. E. 749) ; *Smith* v. *Berman,* 8 *Ga. App.* 262 (68 S. E. 1014). This presumption, however, like all presumptions, may be rebutted. *Smith* v. *Berman,* supra." *Young* v. *State,* 22 *Ga. App.* 111 (95 S. E. 478). The evidence in this case showed that the table upon which these bills were found, was the table in which the defendant kept his personal effects, and that he was in charge of the premises and was the head of the family. And as there was other evidence that tended to show that immediately upon the close of the New York Stock Exchange, the defendant would telephone over long-distance the information that would allow Barrett to determine what the winning lottery number was on that date, and enable him to pay off as quickly as possible, for the lottery company that paid off the quickest seemed to consider it an asset in getting business, we think that this might be considered as corroborative evidence, and considerable latitude allowed in its admission. "It is permissible to strengthen a witness's testimony by evidence of matters showing its consistency and reasonableness, and tending to indicate that the facts probably were as stated by the witness." *Aycock* v. *State,* 62 *Ga. App.* 812, 818 (10 S. E. 2d, 84).

8. "An accessory is one who is not the chief actor in the offense, nor present at its performance, but is some way concerned therein, either before or after the act committed." Code, § 26-601. "An accessory before the fact is one who, though absent when the crime is committed, procures, counsels, or commands another to commit same." Code, § 26-602. "The rule of the common law that in misdemeanors there are no accessories before the fact, but that all who would be such in felony cases are. principals in misdemeanors, is still of force in Georgia." *Kinnebrew* v. *State,* 80 *Ga.* 232 (5 S. E. 56) ; *Jackson* v. *State,* 154 *Ga.* 545 (114 S. E. 811). The defendant here is charged with a misdemeanor, and all who may. be concerned in the commission of such offense or offenses are principals. Hence, if the accused was concerned in the lottery game in the sense that he procured, counseled, or commanded another to commit the crime, he, although absent and in Fulton County, is criminally responsible for such act or acts actually committed in Bibb County. *Kinnebrew* v. *State,* supra;

*Carter* v. *State,* 143 *Ga.* 632 (3) (85 S. E. 884); *Weathers* v. *State,* 24 *Ga. App.* 363 (100 S. E. 768).

9. The accusation contained two counts. The first count charged that the defendant did "keep, maintain, and operate a lottery," etc. The second count charged that he did sell or offer to sell certain numbers representing a chance in a lottery, etc. The defendant contends that the "first count embraces the second count, but the second count does not embrace the first. To convict on count 1 of the accusation, it was necessary to show guilt of maintaining a lottery which includes every element of a lottery, including the sale of chances. Therefore, to convict under count 1 prohibits the additional conviction of selling chances under count 2." There are two distinct crimes charged, and the essential elements of the two crimes are not the same. Just as formerly, to possess intoxicating liquor was one crime, and to sell the same liquor was another crime, the accused could be indicted in one count for possessing illegal liquor, and in another count for selling the same liquor, a verdict of guilty on both counts would be legal; so here, to keep and maintain the lottery is one crime, and "proof that he kept and maintained the same is sufficient to warrant a conviction without showing a drawing. Not only the proprietor, but all the agents assisting in keeping, maintaining, or operating a lottery are guilty as principals." *Thomas* v. *State,* 118 *Ga.* 774 (45 S. E. 622). To sell tickets of a lottery is another crime, even though the tickets relate to maintaining the lottery. *Steyers* v. *State,* 48 *Ga. App.* 785 (173 S. E. 439); *Miller* v. *State,* 48 *Ga. App.* 786 (173 S. E. 491); *Simmons* v. *State,* 162 *Ga.* 316 (134 S. E. 54). A verdict of guilty on both counts was legal.

10. The verdict was authorized by the evidence. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*