### 36218. BREWER *v.* CHAPMAN.

DECIDED JUNE 14, 1956.

*J. A. Mitchell*, for plaintiff in error.

*Earle Norman*, contra.

TOWNSEND, J. The evidence upon the first trial of this case is set out in full in *Brewer* v. *Chapman*, 92 *Ga. App.* 563 (88 S. E. 2d 714), where it was held error to grant a nonsuit in a trover action against one in possession of the automobile claiming a mechanic's lien under Code § 67-2003 as follows: "All mechanics of every sort, for work done and material furnished in manufacturing or repairing personal property, shall have a special lien on the same which may be asserted by retention of such property." This court said (at p. 566) in that opinion: "Whether the defendant had such a lien is determinative of his rights. If he had such a lien, he must foreclose it in the manner provided by our State statutes. The procedure employed by the referee did not pass the title to the defendant, and could only have afforded an opportunity to foreclose a lien on the property if one existed." Upon the first trial the only evidence as to the procedure employed by the referee in bankruptcy was as follows: "Exactly what [the referee] said, I do not remember. The referee just said: 'You want that car?' Mr. Chapman said, 'Yes.' The referee said: 'I will give it to you.' There was no assignment."

Upon the second trial of this case the defendant introduced in evidence a certified copy of docket entry in the bankruptcy proceedings reading as follows: "8/2/50. Check Carl L. Chap-

man (Chapman's Garage) forwarded Clerk's Office, August, $10.00. This covers reclamation costs assessed on verbal authority by referee surrendering bankrupt's automobile to creditor under lien for repairs—no equity above $226 charges." The bankrupt, plaintiff in the trover action, had listed the defendant among unsecured creditors and the amount of the debt as $226. The defendant had appeared in the bankruptcy proceedings for the purpose of asserting his lien on the automobile, possession of which he retained. The docket entry above set out evidences an adjudication by the referee in bankruptcy that the amount of the defendant's lien was greater than the value of the property. No appeal was taken therefrom. Therefore, unless the referee had no jurisdiction of the subject matter, the plaintiff is precluded from asserting title and right to possession of the automobile which, by his trover action, he undertakes to do.

"It is the duty of the referee to marshal the assets of the bankrupt, to supervise the conversion thereof into cash, and distribute the proceeds to creditors, or others entitled thereto; to marshal liens and determine their extent, validity, and order of priority." In re Partridge, 9 Fed. Supp. 805, 807. "Under the Bankruptcy Act . . . a referee is a quasi-judicial officer who gives judgment or final order upon matters properly submitted to him, subject to review by the District Court on the petition of an interested party. Adjudications of the referee, if not reviewed within the time and in the manner prescribed, have the force and effect of judgments and orders of the District Court." In re Tinkoff, 85 Fed. 2d 305, 307. "It has been held in a number of cases that where a lien claim is asserted in bankruptcy proceedings under state statutes which provide that the lien is not preserved unless positive action to enforce it has been commenced in the state court within a definite period, it is not necessary for the claimant to file action in the state court if the lien is asserted in the bankruptcy court within the statutory time. . . . This holding is made upon the theory that the assertion of the claim in the bankruptcy court within the period requisite under the state statute is the equivalent of filing other proceedings for enforcement." American Coal Burner Co. v. Merritt, 129 Fed. 2d 314, 315. In the case of In re Etherton, 88 Fed. Supp. 874, 877 it is pointed out that Sec. 67 b of the Bank-

ruptcy Act (11 U.S.C.A. § 101) providing: "Where by such [state] laws such liens are required to be perfected and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws, except that if such laws require the liens to be perfected by the seizure of property, they shall instead be perfected by filing notice thereof with the court," is complied with where the notice required by statute is filed, and the lien is thus *perfected*. Accordingly, the mechanic's lien here was *perfected* when, in accordance with Code § 67-2003, supra, the defendant retained possession of the car, and where the referee was notified to this effect. Under such circumstances, the referee in bankruptcy had jurisdiction to allow the lien to be enforced and this procedure was the equivalent of foreclosure in the state court.

Sec. 57 (h) of the Bankruptcy Act (11 U.S.C.A. § 93 (h)) provides as follows: "The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors, and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court." Under this section, it was held, in In re Rose, 193 Fed. 815, that where personal property, an organ, was subject to a chattel mortgage in excess of its full value it was error for the referee to require the trustee to sell the property, and that "What ought to be done is for the trustee to negotiate with the mortgagee and see if he will not take the organ in satisfaction of his claim."

Similarly, in In re National Public Service Corp., 88 Fed. 2d 19, certain shares of stock pledged by the debtor and in the possession of creditors were evaluated under § 57 (h) under an order of the referee fixing the valuation at $6,767,904.50, after the debtor corporation's adjudication in bankruptcy and an order was entered that "all claim and interest of the bankrupt and its trustee in and with respect to said collateral . . . be terminated and abandoned by the bankrupt and its trustee." The

creditors then sold the stock for $8,000,000. On petition thereafter for a corporate reorganization the question arose as to the debtor's equity in the stock pledged as collateral and it was held that "the order . . . has so completely divested the debtor-corporation of any proprietary interest in the collateral that there is nothing which can properly be the subject of reorganization," regardless of the fact that the amount realized by the creditors was in excess of the valuation placed thereon in the bankruptcy court.

It thus appears that under bankruptcy procedure it is proper for the referee with the consent of the creditor to evaluate property specifically charged with a debt for which it is security and this is particularly true where such property is in the possession of the creditor at the time of the adjudication in bankruptcy. It is proper, where the amount of the lien is greater than the value of the property, for the court to negotiate with the creditor to see whether he will accept the property in satisfaction of his claim. Under certain circumstances, at least, the result of such agreement is to cut off completely any right of the bankruptcy court or the debtor to any equity in the property regardless of whether a subsequent sale by the creditor results in realizing an amount in excess of that at which the property was valued by the bankruptcy court.

It is unnecessary to determine whether, in this case, the mere finding by the referee that the valuation of the property was not in excess of $226, the scheduled amount of the claim, plus his surrender of the property to the creditor in satisfaction of his lien, resulted in divesting all rights of the debtor after discharge in whatever excess was obtained by the creditor from his subsequent sale of the property over the amount of his lien, or whether the debtor might not have been foreclosed from recovering such excess in a proper proceeding. He could not recover the automobile or its value in a trover action after such adjudication unappealed from, and after his discharge in bankruptcy, for the reason that to recover in trover the plaintiff must prove either a conversion of the property by the defendant or an immediate right of possession in the plaintiff. *Shaw* v. *National Life Ins. Co.,* 51 *Ga. App.* 794 (2) (181 S. E. 872); *Yeomans* v. *Jones,* 54 *Ga. App.* 330 (1) (188 S. E. 62); *Mann v. Massey,* 43

*Ga. App.* 201 (158 S. E. 341) ; *Jackson* v. *Jefferson Loan Society,* 31 *Ga. App.* 114 (120 S. E. 26). Here the plaintiff had no immediate right of possession in the automobile, possession of which was retained by the creditor under the provisions of Code (Ann. Supp.) § 67-2004. The defendant's sale of the property after the adjudication in the bankruptcy court was not a conversion for, even if the plaintiff's equity in the proceeds of the sale was not absolutely foreclosed, the right of the creditor to sell was certainly inherent in the act of the referee in surrendering possession to him and disclaiming any further equity—which equity, if it existed, would have inured to the bankrupt's estate.

The statement of this court to the effect that the procedure employed by the referee did not pass title to the defendant, and that the defendant must foreclose the lien as provided by State statutes, is obiter insofar as the evidence upon the trial of this case is concerned, for it appears now, as it did not appear upon the former trial, that the referee did in fact proceed properly in evaluating the property and surrendering it to the lienholder, and that the rights of the parties were as a matter of fact adjudicated in that procedure. No contrary conclusion is sustainable under *Smith* v. *Berman,* 8 *Ga. App.* 262 (68 S. E. 1014) and cases therein cited. In the *Smith* case the plaintiff was claiming title to the property adversely to the bankrupt and, through him, adversely to the bankruptcy court. The defendant in error here was, as to the bankrupt and the bankruptcy court, claiming only his rights as a secured lien creditor, title to the property being admittedly in the bankrupt and therefore within the control of the court. The adjudication of the referee, accordingly, was to the effect that the lien was valid and that no equity remained over and above the lien for administration in the bankruptcy proceedings. In following this procedure, the referee acted within the purview of the rules laid down in the *Rose* case, supra.

The trial court properly directed a verdict in favor of the defendant, and properly denied the motion for a new trial.

*Judgment affirmed.* *Gardner, P. J., and Carlisle, J., concur.*