## CARTER *v.* THE STATE.

1. The crime denounced in section 186 of the Penal Code of 1910 is embezzlement, and the statute does not collide with the constitutional guaranty of equal protection of the laws, nor with the constitutional inhibition against the enactment of a special law in a case for which provision has been made by a general law.

2. (*a*) The judge of the superior court may in his discretion remove jury commissioners and appoint their successors. The record does not show such abuse of discretion as will invalidate the removal of the commissioners and the appointment of their successors, under the facts narrated in the question certified by the Court of Appeals.

(*b*) The power of a judge of the superior court to order a revision of the jury-list is limited to the failure of the jury commissioners to revise the jury-list as provided by law. If the jury commissioners revise the list, their revision can not be treated as a failure to act, unless the act of revision was in violation of the statute. The law does not require that the jury commissioners shall give all political parties equal or pro rata representation on the jury-list; and the predominance of adherents of one political party on the list, who are otherwise eligible, will not invalidate the revision. The opinion of the judge that jury-lists do not give fair and just representation to the citizenship of the county from the basis of intelligence, experience, and uprightness does not authorize a vacation of the revision of the jury commissioners as having been done in violation of law.

(*c*) A defect which goes to the legality of the selection of the panel of jurors is ground for challenge to the array.

3. Where the president of a bank located in Georgia, while out of the State, with the intent to embezzle the property of the bank, telegraphs to the cashier to send to him certain stock certificates belonging to the bank, stating that he will return the certificates, and the cashier in response to the telegram sends by mail the stock certificates to the president, who receives them out of the State and there disposes of them to his own use, the superior court of the county in this State where the bank is located and where the telegram is received and the shares of stock are deposited in the mail, has jurisdiction to try him for the alleged embezzlement.

JUNE 30, 1915.

Constitutional questions; from Court of Appeals (Case No. 5747).

*F. B. Carter, W. A. Blount, A. C. King, N. A. Morris, G. D. Anderson, B. L. Smith,* and *O. R. DuPree,* for plaintiff in error.

*Herbert Clay, solicitor-general, G. F. Gober,* and *W. Butt,* contra.

EVANS, P. J. This case comes to us upon the certification of certain questions propounded by the Court of Appeals.

1. The first involves the constitutionality of Penal Code section 186. That section reads as follows: "Any officer, servant, or other person employed in any department, station, or office in any bank or other corporate body in this State, or any president, director, or stockholder of any bank or other corporate body in this State, who shall embezzle, steal, secrete, or fraudulently take and carry away any money, paper, book, or other property or effects, shall be punished by imprisonment and labor in the penitentiary for not less than two years nor longer than seven years." The nature of the constitutional attack made upon it requires a construction of the section. It was urged in the Court of Appeals, by counsel for the plaintiff in error, that the statute rendered the

stealing by an officer, servant, or stockholder of a corporation a felony, irrespective of the ownership of the property by the corporation. It was argued that the words of the statute do not confine its operation to property intrusted to the person stealing, because under the statute any stockholder, although not employed in any way and without access to the corporate assets, is equally guilty under this section with the president or other officer. This code section was enacted many years ago, and in the review of cases of persons convicted thereunder there has been no attempt toward such construction of it as is now sought. It will be found in the Penal Code of 1833 (Cobb's Digest, 795) along with the other sections defining the various kinds of larceny. Manifestly the legislature intended to denounce a crime other than larceny; otherwise it would be but bare surplusage. To constitute the crime of larceny at common law it is essential that the thing shall be taken by trespass. The original English statute was enacted in consequence of a decision that a bank's cashier who received money from a customer and appropriated it to his own use could not be convicted of larceny, on the ground that the money had never been in the employer's possession. Embezzlement was not a crime at common law, and the statute was intended to punish for the fraudulent appropriation of property by one lawfully in possession before it has been in the possession of the owner, or by one who has lawfully obtained possession from the owner. *Robinson* v. *State,* 109 *Ga.* 564 (35 S. E. 57, 77 Am, St. R. 392). In the case just cited it was said: "It seems that it is necessary that the appropriation shall be made of property belonging to another, or, in case of a public officer, to the public, which rightfully came into the possession of the person charged with its appropriation, and that such person can not be convicted unless it be shown that the money has been fraudulently appropriated by the officer to his own use." We reaffirm the construction heretofore put on the statute by this court.

Thus construed, is the code section open to the constitutional objections urged against it, viz., that it is opposed to the constitutional mandate that protection to person and property shall be impartial and complete, in that the code section "does not give the same protection to the persons named therein as it does to other persons for stealing, and therefore is not impartial and uniform in its operation;" it is a special law enacted in a case for which

provision has been made by an existing general law, to wit, that de-
fining and punishing larceny; and, lastly, that it is violative of
the 14th amendment of the Federal constitution, on the ground
that it denies the equal protection of the laws to persons within the
jurisdiction of the State? The constitutional assaults on this stat-
ute are palpably without merit. We do not understand that the
guaranty of equal protection of the laws was intended to apply to
this kind of a case, and, as is already pointed out, the offenses of
larceny and embezzlement are different, although the latter em-
braces some of the elements of the former.

2. The plaintiff in error in the Court of Appeals was indicted
for embezzlement. At the October term, 1913, the court passed
the following orders: "For good and sufficient cause to me man-
ifest, C. A. Gates, D. L. Jarrett, Hugh Edmonson, J. F. Cook,
R. L. Ayers, and W. V. Russell, the present jury revisers in and
for said county, are hereby removed, and their authority as jury
revisers is hereby revoked; and the clerk of the superior court is
hereby ordered and directed to enter this order upon the minutes
of court, and notify said parties of the action of court. This 18th
day of October, 1913." "In Gilmer Superior Court. October
Term, 1913. The jury revisers in and for said county having been
this day removed by me, and the positions of jury commissioners in
and for said county made vacant, it is hereby ordered, that W. H.
Gudger and Jason Akin be and they are hereby appointed as jury
commissioners to fill the unexpired terms of Hugh Edmonson and
J. F. Cook, whose terms would have expired July 31st, 1914; that
W. A. Allen and B. L. Hensley be appointed to succeed R. L.
Ayers and W. V. Russell, whose terms would have expired July
31st, 1916; and that J. E. Kell and George Neeley be appointed to
succeed C. A. Gates and D. L. Jarrett, whose terms would have ex-
pired July 31st, 1918. It is further ordered that the clerk of this
court enter this order upon the minutes of said court, and notify
said parties of their appointment and to appear at once and be
qualified in terms of the law to discharge the duties as such jury
revisers. This October 18th, 1913." "In Gilmer Superior Court.
October Term, 1913. It being made to satisfactorily appear to the
undersigned judge of said court that the jury-lists of said county
were not properly revised in August, 1912, but that, in the selection
of names among the taxpayers of said county, the jury-lists were

made up, or a large majority, of men of one political party, to the exclusion of names of citizens equally qualified in every respect of different parties, and the jury-lists, as the same now appears, and the boxes as made up, do not give fair and just representation to the citizenship of said county, from the basis of intelligence, experience, and uprightness, it is therefore ordered that the jury commissioners of said county convene at the court-house in Ellijay in said county, within ten days from this date, and proceed at once to revise the jury-lists of said county, and prepare the box and list of jurors in compliance with the statute. It is further ordered, that, upon the completion of their work, said commissioners, together with the ordinary of said county, at once draw thirty names from the grand-jury box to serve at the adjourned term of this court to be held commencing on the second Monday in December next, and that they draw from the traverse-jury box thirty-six names to appear and serve at said date as traverse jurors, and that in addition thereto they draw an additional panel of eighteen jurors to be and appear at said court on Wednesday morning after the second Monday in December, at eight o'clock. It is further ordered that the clerk of this court, immediately upon the drawing of the same, issue the usual venire and deliver the same to the sheriff, requiring him to summon said panels of jurors to be and appear and attend upon said court as hereinbefore stated. Those summoned to appear on Monday morning are required to be and appear at nine o'clock a. m. on that date. This 18th day of October, 1913." "It is now, at 10 o'clock a. m. on this the 18th day of October, 1913, ordered that the superior court of said county of Gilmer, now in session, take a recess until 9 o'clock a. m. on December 8th, 1913, at which time said term of the court shall reconvene for the transaction of any business that may be there pending and undetermined in said court." The plaintiff in error was put upon trial at the adjourned term; and he objected, by way of plea in abatement and by challenge to the array and to the poll, to being tried by a jury drawn from the jury-box under the foregoing orders. The Court of Appeals requests an instruction as to the legality of "the action of the judge of the superior court in discharging the jury commissioners and appointing new jury commissioners, and in directing the new commissioners to revise the jury-lists of the county and prepare the box and lists of jurors, and in

directing at the same time the drawing and summoning of jurors after such revision," and as to whether the foregoing facts constitute a sufficient ground for a plea in abatement or for challenge to the jurors.

At common law the selection and summoning of the array of jurors for a particular session of court was confided almost wholly to the sheriff. He selected at discretion, from the body of freeholders in a county or from the body of citizens in a city, the persons whom he would have assembled for this purpose, and brought them into court under authority of a writ of venire facias in civil cases, or a precept in criminal cases, and entered the names of those summoned on a paper. "A jurie," says Lord Coke, "is said to be impanelled when the sheriff hath entered their names into the panel, or little piece of parchment, in panello assisæ." Co. Litt. 158 b. (Thompson & Merriam on Juries, 107, note 1). There was no procedure at common law similar to what we call the making of the jury-lists. Our statute is comprehensive upon that subject, and confides the selection of persons eligible to serve as jurors to a board of jury commissioners, who are appointed by the judge. This board consists of six discreet persons, who hold their appointment for six years. The judge of the superior court is given the right to remove these commissioners for cause at any time in his discretion, and to appoint their successors. Penal Code (1910), § 813. This statute confers on the judge the power of removal, when in his discretion he deems a change of commissioners to be advisable. The words "for cause" are simply admonitory to the judge, that his discretion shall not be oppressively or capriciously exercised. *Edge* v. *Holcombe*, 135 *Ga.* 765 (70 S. E. 644). Under the facts appearing in the record, it can not be said that the judge's discretion was oppressively and capriciously exercised in the removal of the jury commissioners.

Did the judge have the authority to vacate the jury-lists as prepared by the jury commissioners who were removed, and peremptorily order the new commissioners to prepare a new list, and draw a jury, under the recitals in his order? As has already been stated, our system of making up the lists of jurors is of statutory origin. The statute is comprehensive of the whole subject-matter, and is a substitute for the practice which prevailed at common law. The power of the judge to vacate the jury-lists and to compel the prep-

aration of new lists must be derived from the statute. The statute provides that biennially, or, if the judge of the superior court shall direct, triennially, on the first Monday in August, or within thirty days thereafter, the jury commissioners shall revise the jury-lists, except in certain counties where the revision may be annual. The clerk of the superior court is ex-officio clerk of the board of commissioners. The jury commissioners are directed to select from the books of the tax-receiver upright and intelligent men to serve as jurors, and to write the names of the persons so selected on tickets. From these they shall select a sufficient number, not exceeding two fifths of the whole number, of the most experienced, intelligent, and upright to serve as grand jurors, whose names they shall write upon other tickets. The entire number first selected, including those afterwards selected as grand jurors, shall constitute the body of traverse jurors for the county, to be drawn for service as now provided by law. The clerk of the superior court shall make out, in a book, lists of the names respectively contained in the grand-jury and traverse-jury boxes, alphabetically arranged. "On failure of the commissioners of any county to revise the jury-list as provided in this Article, the judge of the superior court of such county, either in term time or at chambers, shall order the revision made at such time as he may direct." Penal Code (1910), §§ 813 et seq. The power of the judge to order a revision is dependent upon the failure of the jury commissioners to revise the jury-lists as provided by the statute. The commissioners in the instant case made the biennial revision. Unless this revision was made in violation of the statute, the court had no power to set it aside. The law does not require that the jury commissioners shall give all political parties equal or pro rata representation on the jury-lists. It has been held that the commissioners in the exercise of their discretion may omit from the jury-lists all persons whose business or avocation is such that it is reasonably probable that an excuse from jury service would be granted, such as lawyers, ministers, doctors, etc. *Rawlins* v. *State,* 124 *Ga.* 31 (52 S. E. 1) ; *Dickens* v. *State,* 137 *Ga.* 523 (73 S. E. 826). It is not ground for setting aside a jury revision that the jurors selected owned a small percentage of the wealth of the county, or that a majority of them belonged to a particular religious sect. *Davis* v. *Arthur,* 139 *Ga.* 74 (76 S. E. 676). The judge was of the opinion that the jury-lists as now

made up "do not give fair and just representation to the citizen-ship of said county, from the basis of intelligence, experience, and uprightness." The law confers a discretion upon the jury commis-sioners in the selection of those as coming within the statutory qualification. The presumption is that they did their duty; and this presumption can not be overcome by the bare ex parte order of the judge, reciting that in his opinion the jury-lists are not a fair representation of the intelligence of the county. If the jury was improperly impaneled at common law, and the objection went to the panel as a whole, the defect could be taken advantage of by a challenge to the array. Likewise, under the system of selecting jurors by a board of jury commissioners, if the objection goes to the validity of the panel as a whole, it can be made by way of chal-lenge to the array. *Thompson* v. *State,* 109 *Ga.* 272 (34 S. E. 579).

3. The Court of Appeals asks: "Is the venue of the offense of embezzlement, under section 186 of the Penal Code of 1910, in the county in which a banking corporation from which the property is taken has its principal office and place of business, when the property taken consists of shares or certificates of stock, and the taking is by the president of the corporation, by means of telegrams sent by him while he is in another State, directing or requesting the cashier of the bank to send the stock to him, and stating that he will return it; in response to which the stock certificates are mailed to him by the cashier from the principal office in this State, and they are received by the president in the other State and he there disposes of them?" The question propounded assumes that the crime of embezzlement is committed in this State by the per-petration of the enumerated acts. If the fraudulent intent by the bank's official to convert the bank's property to his own use was first conceived and formed by the official while in another State and in possession of the bank's property, the crime of embezzlement would not be committed in the jurisdiction of this State. But if the official in another State concocts the crime there and executes it in this State, his actual presence in this State is not necessary in order to make him amenable to the laws of this State. A person in one jurisdiction may put in force an agency or force which does harm in another jurisdiction, and he will be considered construc-tively present at the place where by his command or authority his

act is executed. "The rule," said Beasley, C. J., "appears to be firmly established, and upon very satisfactory grounds, that where the crime is committed by a person absent from the county in which the act is done, through the means of a mere material agency, or by a sentient agent who is innocent, in such cases the offender is punishable where the act is done. The law implies a constructive presence from the necessity of the case; otherwise the anomaly would exist of a crime, but no responsible criminal." State *v.* Wycoff, 31 N. J. L. 69. According to the facts hypothesized by the Court of Appeals, it is inferable that the bank president fraudulently represented to the cashier that he wished the stock certificates for an entirely innocent purpose and that he intended to return the same, but instead of returning the shares he converted them to his own use. The fraud of the president in requesting the cashier to send to him the stock was his means of procuring the bank's property for a subsequent conversion. It is true that he was not personally within the State at that time, but he was here in purpose and design. When he employed the telegraph company to deliver his telegraphic request to the cashier in Gilmer county, he made that company his agent. *Western Union Tel. Co.* v. *Sholler,* 71 *Ga.* 760. The telegraph company's delivery of the telegram to the cashier was the president's delivery, and the latter was constructively present with his agent in its delivery. If Gilmer county had been a border county, and the defendant, standing in the adjoining State, had requested the cashier to throw the shares to him over the State line, would it be doubted that he was amenable to the jurisdiction of the courts of Gilmer county? Furthermore, the defendant requested the cashier to send him the stock certificates. This general direction amounted to an instruction to the cashier to select any proper agency to convey the shares to him. When the cashier deposited the package with the stock certificates in the mail, he was acting according to the president's instruction. Thus another agency of the president's choosing delivered, in Gilmer county, the bank's stock to the mails. Certainly some offense was committed in Gilmer county; and it would be absurd to say that a crime was committed in Gilmer county, if there was no one criminally responsible for it. The reasoning of Judge Beardsley, in People *v.* Adams, 3 Denio, 190 (45 Am. D. 468), on the liability of a person concocting a crime in one State,

and consummating it in another by innocent agents acting under his authority, to be prosecuted therefor in the courts of the latter, is unanswerable. He said: "For all civil purposes a person out of this State may act by procuration within its limits, and thus, although absent at the time, he may become subject to the State law. Rights may thus be acquired by the absent party, as he may also become civilly liable under the law of this State, for what is done here by his authorization and procurement. The individual remedy, in such case, is perfect; and if the criminal law of the State is thus violated, why should not the absent offender be responsible criminally, when afterwards found within the State? In authorizing another to act for him, the principal so far voluntarily submits himself to the law of the place where the authorized act is to be performed. This is confessedly so for all civil purposes. If an act thus authorized results in wrong to an individual, his right to redress against the principal, though absent, is undoubted. As to the person injured, the local law was violated by the absent wrong-doer; and if the act done was also a violation of the local criminal law, is the author and procurer of the deed guiltless? Does the law hold him to have been within its jurisdiction so far as respects the civil remedy, but not for the purpose of punishment? I see no ground on which the distinction can be sustained. An absent party procures an act to be done within this State, and, so far as respects criminal or civil responsibility, I think he should not be allowed to say he is not amenable to the law. He clearly would be so if the act had been done by himself in person within the limits of the State, and it is precisely the same if done by an innocent agent." We think, both on reason and authority, this question should be answered in the affirmative. See Reg. *v.* Murdock, 5 Cox's Cr. Cases, 360; R. *v.* Taylor, 3 Bos. & P. 596.

*All the Justices concur.*