38382. CURTIS *et al.* v. THE STATE.

DECIDED DECEMBER 5, 1960.

*A. A. Farrar, Marvin O'Neal, Jr., Charles H. Edwards, H. A. Stephens, Jr.,* for plaintiffs in error.

*Jeff C. Wayne, Solicitor-General, Sidney O. Smith, Jr.,* contra.

TOWNSEND, Presiding Judge. ■ After the State and the defendants announced ready, issue had been joined and a jury stricken, the defendants made an oral motion to quash the indictment. "Where an indictment is not on its face so defective that a motion in arrest of judgment would lie, an objection to it must be in writing [citation]. An oral objection, being ineffective for its purpose, is the equivalent of none at all, and, if no other action be taken, a waiver results." *Sheppard v. State,* 95 Ga. App. 507, 508 (3) (98 S. E. 2d 169). To the same effect see *Gilmore v. State,* 118 Ga. 299 (1) (45 S. E. 226). Consequently, the question presented by the motion is whether any count of the indictment is so defective that a motion in arrest of judgment would lie.

The former appearance of this case in this court (*Curtis v. State,* 99 Ga. App. 732, 109 S. E. 2d 868) adjudicated that the intent to defraud is the gist of an offense under that portion of *Code Ann.* § 97-112, which prohibits the use of a device, scheme or artifice to defraud. As the court stated at page 736: "*Code Ann.* § 97-112 on the other hand makes it unlawful, and by definition a fraudulent practice, to employ any scheme or device *to defraud.* The one is retrospective in nature, the other prospective. A scheme to defraud is such a scheme as is initiated by the perpetrator with an intent to defraud another and cause him to suffer a pecuniary loss, but the intent, not the loss, is the subject matter of the crime." As to the counts of the indictment drawn under that portion of the statute, each sufficiently charges a complete crime.

Also *Code Ann.* § 97-112, as amended (Ga. L. 1957, pp. 134, 159), provides that it shall be a misdemeanor "for any person to make to any prospective purchaser, customer or client any representation that the filing of a registration statement or the registration of any security under section 97-104, or the existence of an exemption for any security or transaction, means that the Commissioner has passed in any way upon the merits of such security or has recommended or given approval to such security or transaction." It is clear from the statute that two types of crimes are prohibited: (1) the making of an intentional representation that by the filing of a registration statement,

the Commissioner of Securities has passed upon the merits of the security, and (2) the use of a device, scheme or artifice to defraud, or the commission of any act, practice or course of business which would operate as a fraud on the purchaser. In the former instance the making of the representation completes the criminal act, whereas in the latter instance an intent to defraud must be shown. Some of the counts of the indictment are drawn under that provision of the statute prohibiting representations that the Commissioner of Securities has passed upon the merits of such stock, while the other counts are drawn under the provision of the statute which requires an intent to defraud. Therefore, all counts of the indictment are sufficient to show a violation of one, or the other, of these provisions of *Code Ann.* § 97-112. There is no error shown in the court's overruling the motion to quash the indictment.

■ As to the defendant W. A. Byrd, there is insufficient evidence in the record to authorize a conviction. The only reference to this defendant in the record is where he instructed the corporation's salesmen to conform their activities to those allowed by the "Securities Act." There is no evidence that Byrd conspired to make or made any fraudulent statements to any prospective customers. Any further reference to the defendants excludes the defendant W. A. Byrd.

■ The law in Georgia is firmly established that "in misdemeanors all are principals." *Parmer v. State,* 91 Ga. 152 (16 S. E. 937). One may be convicted as a principal, therefore, even though in another county (*Rawlins v. State,* 70 Ga. App. 308, 28 S. E. 2d 350), or even in another state, when a conspiracy is shown to exist and during the pendency thereof an overt act is perpetrated by one of the co-conspirators pursuant to the conspiracy. The evidence discloses that the salesmen were instructed by the defendants to make certain representations which were ultimately shown to be false for the purpose of securing purchasers of stock in the corporation. "Where one phase of the evidence would authorize the jury to find that two or more principals conspired to commit a crime and that, pursuant to this conspiracy, overt acts constituting the crime were committed by at least one of such principals, the other aiding and

abetting therein, it is proper for the trial court to charge the jury on the law of conspiracy." *Garner v. State*, 83 Ga. App. 178 (2) (63 S. E. 2d 225). "It it well settled that a criminal conspiracy may be shown by either direct or circumstantial evidence, and that, if there is any evidence showing or tending to show such a conspiracy, a charge upon that subject is not error." *Banks v. State*, 74 Ga. App. 449, 453 (40 S. E. 2d 103). See *Walls v. State*, 83 Ga. App. 318 (63 S. E. 2d 437). Applying the above principles of law, the charge was correct and applicable to the issues of the case because the evidence authorized a finding that an unlawful scheme was entered into by and between the defendants and was perpetrated to defraud the investors. The charge was not erroneous for any of the reasons stated in the amended motion for a new trial.

■ Special grounds 4 and 5 of the motion assign as error the charge of the trial court on the subject of intent. The defendants complain of the trial judge's charge that "if the intent to defraud was conceived after the sale of the stock, then you [the jury] would not be authorized to convict the defendants or either of them, who did not have the intent until after the sale of the stock," is in conflict with a later charge relative to intent, to wit: "In determining whether or not the defendants or either of the defendants had any intention to commit any wrong as charged in the bill of indictment, at the time it was alleged to have been committed, then, you may look to all the facts and circumstances of the case. I charge you, you may take into consideration the amount of money that the evidence shows, if it does show, was taken in, [and] the disposition of the money, if the evidence reveals. You look to the evidence to determine that. You look to the evidence of loans to officers, if any were made to the officers, or to the agents of the concern. You may consider all of that. All of these things may be considered by you in determining the intention." Intent, being a mental condition, is an exceedingly difficult thing to prove, as well as to define. Judge Pottle lucidly described the subject in a civil case in the court's opinion in *Gaynor v. Travelers Ins. Co.*, 12 Ga. App. 601, 605 (77 S. E. 1072): "It is rarely ever possible to prove an intent by direct evidence. Intent is something which exists

in the human mind and can be manifested only by external acts from which an inference of intent will arise." It is inherently difficult to express what external acts will reflect a particular person's intent at a given time. Each case must necessarily rest upon its own bottom. In the case *sub judice* we feel the trial court did not err. The acts of the defendants in making large loans to the corporate officers and agents, as well as how they handled the affairs of the company, are relevant factors as a circumstance to be considered by the jury in determining the question of intent. All of the acts and actions of the defendants herein mentioned are reasonably connected in time with the criminal acts charged. All the activities occurred during the formation of the corporation, including the sale of the stock, from which transaction the alleged violation of the Securities Act occurred. It is true that some of these acts were subsequent to the sale of the stock, but they may reflect on the over-all intent of the officers and agents at the times the sales were made, which are alleged in the indictment to be fraudulent.

Where testimony tends to illustrate an issue or to aid in arriving at truth, it should not be rejected, though alone it may appear to be irrelevant. *Stone v. State,* 118 Ga. 705 (45 S. E. 630, 98 Am. St. Rep. 145); *Talbotton R. Co. v. Gibson,* 106 Ga. 229 (32 S. E. 151); *Walker & Chapman v. Mitchell & Co.,* 41 Ga. 102; *Harris v. State,* 69 Ga. App. 872 (27 S. E. 2d 51); *Kutzchan v. State,* 68 Ga. App. 121 (22 S. E. 2d 410).

"Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant." *McNabb v. State,* 70 Ga. App. 798, 799 (29 S. E. 2d 643).

Where knowledge, motive, intent, good or bad faith, and other matters dependent upon a person's state of mind are involved as a material element in a particular criminal offense for which the defendant is on trial, and the defendant has engaged in a course of conduct at or about the same time the act in question was committed, and these transactions are such as to illustrate the state of the defendant's mind on the subject involved, proof of them may be received. *Barber v. State,* 95 Ga. App. 763

(98 S. E. 2d 575); *Sanders v. State,* 54 Ga. App. 238 (187 S. E. 608); *Jones v. State,* 41 Ga. App. 277 (152 S. E. 591); *Hayes v. State,* 36 Ga. App. 668 (137 S. E. 860).

Furthermore, it is not a unique proposition that the actions of a defendant after an alleged crime are relevant to be considered by the jury on the issue of guilt. It has long been held that under certain circumstances flight by the defendant may be introduced as a circumstance of guilt. However, an accused may show such flight was not prompted by a consciousness of guilt. *Johnson v. State,* 120 Ga. 135 (1) (47 S. E. 510). Likewise, in the instant case the admission of evidence regarding the defendants' activities soon after the sales is not a one-way street for the prosecution. The defendants had the right to produce evidence or otherwise show a proper administration of the affairs of the corporation which would reflect no intent to defraud the stockholders, and that an honest effort was being made to accomplish the best interest of the business enterprise. So long as the acts are reasonably connected with the fact sought to be inferred, they are relevant as a circumstance and should be admitted.

The evidence in the instant case reveals large loans to the officers. Some loans were explained by the defendants' statements, and, as to others, the record is silent. Also, there was a great deal of testimony concerning how the affairs of the organization were handled during the embryonic organization of the corporation. We feel the trial judge's charge was authorized and correct which allowed the jury to consider these facts as a circumstance to be considered by the jury when determining the defendants' intentions at the time the sales were consummated.

■ Special grounds 6 and 11 of the motion complain of the refusal of the trial court to give a requested charge to the effect that to authorize a conviction the jury must find the alleged deceit or fraud on the part of the defendants was such as would cause a person or persons sought to be deceived to follow some course he would not have pursued but for the alleged deceitful conduct. The criminal act attributed to the defendants is the formulation of a scheme, trick or artifice, together with an attempt to defraud. The evidence is sufficient to authorize a charge

on conspiracy. As stated by this court in *Curtis v. State,* 99 Ga. App. 732, 736, supra: "Under *Code Ann.* § 97-112 the existence of the scheme, device or artifice, and its use with an intent to defraud, regardless of outcome, constitutes the inhibited act." The statute does not require the accomplished overt act of defrauding a person, but *it is the use* of the scheme, trick or artifice *with an intent to deceive* which is prohibited by the statute. The victim's reaction to the fraudulent practice is not an essential element before a conviction is authorized. The requested charge is not applicable, and the trial court properly refused the requests recited in special grounds 6 and 11.

■ Special ground 7 complains of the court's refusal to give the following request to charge: "Sporadic deceits in the course of a business will not constitute a device, scheme and artifice to defraud such as would authorize a conviction of the defendants in this case [and] are not such as are contemplated by the law under which the indictment is found." Special ground 8 complains of the refusal to grant a similar request. These grounds show no reversible error. *Code Ann.* § 97-112 makes it an offense (1) to employ any device, scheme or artifice to defraud, or (2) to engage in any act or transaction which would operate as a fraud or deceit upon the purchaser. An isolated transaction might or might not be sufficient evidence of a scheme and device to defraud and it cannot be said that such is not contemplated by the law. These requests, not being perfect in form, were properly refused. *Atlantic Coast Line R. Co. v. Brown,* 82 Ga. App. 889 (1) (62 S. E. 2d 736). The fact that the misrepresentations were occasional and isolated would not constitute a defense so long as the defendants directed them to be made; they were falsely made, they were made with intent to defraud, and were such as would operate as a fraud on the purchaser. Also, for the same reason, it was not error for the trial court to refuse a requested charge based on the theory that without a relation of trust or fiduciary relationship a purchaser has no right blindly to rely on general statements and must exercise precaution to ascertain their basis of fact. Special ground 9 is without merit.

■ Special ground 10 complains of the refusal to give the fol-

lowing request: "If it appears to the jury that any or all of the things alleged in this indictment were done, if in fact they were done, by the defendants, or any of them, in an honest belief that no falsity was attached to the representations, then I charge you that you would be authorized to infer that there was no joint operation of act and intent to commit a crime or misdemeanor." Such requested charge is not adjusted to the issues of the case. A number of the counts charge the defendants with representations to the effect that the Securities Commissioner had passed upon the merits of the stock. An intent to deceive, under these counts, is not an essential element of the crime charged. The criminal act is complete upon the making of the representation. This offense was added to the original Georgia Securities Act by Georgia L. 1957, pp. 134, 159 (*Code Ann.* § 97-112). The request is not limited to those counts where an intent to defraud is necessary for a conviction.

■ As to the general grounds of the motions for a new trial, the evidence was sufficient to sustain the convictions. It was shown, both by documentary evidence, including the prospectus, the "pitch sheets," letters and telegrams, and by the parol evidence of salesmen attending the meetings that such salesmen were instructed by the defendants, who were the officers engaged in organizing the corporation, to make statements in efforts to induce sales of stock which were fraudulent and misleading, among them being false representations in the prospectus that the corporation's "invested dollar" was placed up to 50% in teacher loans, 25% in blue chip investments, and 25% in short term gain investments, whereas there were no blue chip investments and, so far as the record shows, no teacher loans. The money taken in from sales of stock was in large part dissipated in stock of highly speculative corporations which subsequently ceased doing business, and in large loans to the defendants. The prospectus represented that the officers were bonded, which was untrue. The pitch sheet showed that the salesmen were instructed to say that the corporation was organized to provide a profitable place for teachers to transfer their savings; that loans would be made exclusively to people in the education field; that they were secured by good collateral, and that the

money could be withdrawn as needed, as in a savings account, all of which was proved untrue. Salesmen were instructed to and did say that the filing of the registration of stock with the Commissioner of Securities meant that the Commissioner had passed on the merits of the stock and had recommended it, and that interest at 5% was guaranteed by the Secretary of State; also that certain well known educational figures were presently actively participating stockholders, which was also untrue.

The contention that venue was not proved is also without merit. All but two of the transactions charged were consummated in Hall county, the county of venue, and as to those two there is evidence that they were commenced in that county. That the defendants were not themselves in all instances present in the county, and that some of them were not present in the county at all until the time of trial, does not of itself require reversal. If, as the evidence warranted, the jury found that the defendants had conspired to sell stock by means of the practices and misrepresentations inhibited by *Code* § 97-112, and pursuant to such conspiracy stock was in fact offered and the misrepresentations made in Hall County, the fact that the defendants were not physically present in the county at the time their agents put the scheme into operation does not operate to relieve them from being tried and convicted in such county. *Danzley v. State*, 25 Ga. App. 170 (11) (102 S. E. 915); *Jackson v. State*, 154 Ga. 544 (114 S. E. 811); *Chambers v. State*, 194 Ga. 773 (22 S. E. 2d 487).

■ The trial judge, by the sentences, placed a prison term upon each of the defendants on each count, the sentences to run consecutively, but each prison sentence would be served on probation on the condition that the defendants pay the specified fine and make restitution to named individuals in certain amounts. Error is assigned on the ground that the sentences constitute cruel and unusual punishment under Article I, Section I, Paragraph IX, of the Constitution of Georgia (*Code* § 2-109), and imprisonment for debt under Article I, Section I, Paragraph XXI (*Code* § 2-121). As to the first contention, it is the fact that the sentences are to be computed consecutively about which the defendants complain. The defendants rely heavily on *Keni-*

*mer v. State*, 83 Ga. App. 264 (63 S. E. 2d 280) and its prior appearance, 81 Ga. App. 437 (59 S. E. 2d 296). We hold that these cases, involving criminal contempt, are not applicable where the crime and the penalty are defined and prescribed by the legislature. The principle of law in the *Kenimer* cases will be limited to the facts therein stated.

"It is well settled, by repeated decisions of the Supreme Court and of this court, that where the sentence imposed by the trial court is within the limit fixed by the statute, it will not be set aside and a new trial granted on the ground that the sentence imposed is excessive and the punishment cruel and unusual, and, therefore, in violation of the Constitution of this State, Article I, Section I, Paragraph IX (Civil Code, § 6365)." *Rogers v. State*, 11 Ga. App. 814 (2) (76 S. E. 366); *McCullough v. State*, 11 Ga. App. 612 (76 S. E. 393). The defendants were convicted on 36 separate and distinct counts which charge 36 separate and distinct crimes. It would be a novel proposition of law to say the trial court could not make sentences on conviction on separate and distinct counts of an indictment cumulative. As was observed by Judge Powell in *Tooke v. State*, 4 Ga. App. 495, 504 (61 S. E. 917), "Where the same indictment really charges a number of distinct and separate transactions, it becomes the duty of the trial court to conduct the case, and of the appellate court to review it, just as if it were a consolidation of separate indictments; and where the defendant was convicted generally, —that is to say, on all of the counts—or specifically on more than one of them,—it was the course at common law to sentence the defendant on each count; and these sentences might be cumulative. For some reason, it has not been the practice in this State to impose cumulative sentences, upon the different counts of an indictment charging distinct offenses; but we know of no reason why it may not be done; for as to these things we are supposed to follow the common law. Indeed, all through the course of our reports are to be found intimations that the power to impose more than one sentence in such a case exists." See *Bird v. State*, 89 Ga. App. 31 (78 S. E. 2d 553). This assignment is not meritorious.

Error is further assigned in the bill of exceptions on the sen-

tences for the reason that they exceed the limits permitted by the Georgia Securities Act in that they include imprisonment, the offenses charged being first offenses. *Code* § 97-9901 provides that a person violating the provisions of the Securities Act shall be guilty of a misdemeanor "and upon conviction thereof shall be punished by a fine of not more than $500 for first offense, and shall be punished by a fine of not more than $5,000, or by imprisonment for not more than one year, or by both such fine and imprisonment for subsequent offenses." The movants are correct in asserting that the sentence, as to each of the 36 counts involved in this indictment, is a "first offense" sentence, since the indictment did not allege and the proof did not show a former conviction of any of the defendants under the terms of the act. This statute, allowing increased punishment for subsequent offenses, is similar in construction to the habitual criminal statutes. See *Code* § 27-2511. The increased punishment doctrine for recurrent crimes of the same nature has had a long and litigious history. See 58 A. L. R. 20, 82 A. L. R. 345, 116 A. L. R. 209, 132 A. L. R. 91, 139 A. L. R. 673. Its purpose is to serve as a warning to a first offender so as to afford him an opportunity to reform, and to penalize him upon subsequent infractions for his failure to do so. 24 A. L. R. 2d 1247. In habitual criminal statutes, the word "offense" is frequently read "conviction." State v. Faull, 178 Wis. 66 (189 N. W. 274). In the statute under consideration the defendant, *upon conviction* may be fined for the first offense, and fined or imprisoned, or both, for subsequent offenses, and accordingly, giving this statute its usual construction, the punishment meted out must be a first offense punishment unless the pleadings and the proof show a prior conviction so as to entitle the State to treat the offense as a "subsequent offense" within the meaning of the Code section.

It is contended, however, that even for a first offense imprisonment may be inflicted under the general misdemeanor punishment section, *Code* § 27-2506, which specifies that one convicted of a misdemeanor may be both fined and imprisoned "unless otherwise provided," and that since *Code* § 97-9901 is silent as to imprisonment on a first offense resort may be had, as to this feature of the punishment, to the general act. Penal statutes

are always construed strictly against the State and liberally in favor of human liberty. *Matthews v. Everett,* 201 Ga. 730 (41 S. E. 2d 148); *Glustrom v. State,* 206 Ga. 734 (58 S. E. 2d 534); *State of Ga. v. Schafer,* 82 Ga. App. 753 (62 S. E. 2d 446); *Moore v. State,* 94 Ga. App. 210 (94 S. E. 2d 80). In 24 C. J. S. 1193, Criminal Law, § 1979 it is stated: "Statutes prescribing punishment are strictly construed, and must be construed together. They never are construed against an accused or a convicted person beyond their literal and obvious meaning. . . . If a statute creating or increasing a penalty is capable of two constructions, it should be construed so as to operate in favor of life and liberty. . . Where a crime is penalized by a special law, the general provisions of the penal code are not applicable." Further, the footnote, citing Scrinegrour v. State, 2 Pinn., Wis. 112, and People v. Hoaglin, 262 Mich. 162 (247 N. W. 141), states: "Where there are two sections in a statute providing a punishment or penalty for the same act or offense, one providing a greater and the other a lesser, the section prescribing the greater is abrogated by the one prescribing the lesser. Where any uncertainty develops as to which penal clause is applicable, the accused is entitled to have the lesser of two penalties administered." *Code* § 97-9901 is not subject to the construction that because the legislature did not say that, as to a first offense, the defendant would *not* be subject to imprisonment, the provisions of *Code* § 27-2506 can be invoked in addition to the penalties prescribed in *Code* § 97-9901, thus combining the two sections so that a defendant may receive a total punishment greater than that provided by either. The legislative intent is perfectly clear; it did not by inadvertence omit the imprisonment feature of the punishment as to a first offense because in the very same sentence it provided imprisonment on conviction of a second offense. The clear inference is that it intended no punishment by imprisonment for a first offense. This is all the more reasonable when it is noted that this statute creates a crime not known at common law and makes penal certain acts not heretofore penal under the statutory law of the State.

In 50 Am. Jur. 438, Statutes, § 414, it is stated: "The maxim,

expressio unius est exclusio alterius, has been regarded as particularly applicable to statutes defining crimes, so that where a statute defining an offense designates one class of persons as subject to its penalty, all other persons are deemed to be exempted therefrom. Similarly, where an offense is defined by statute and its application to enumerated conditions prescribed, it is implied that it shall not apply to other conditions not enumerated." Where the punishment is specifically stated, the maxim should have equal force. It was accordingly error for the trial court to sentence these defendants upon the various counts of the indictment so as to impose both prison sentences and fines on each. The court may, for a first offense, sentence the defendant separately upon each count of the indictment by fine only, up to a maximum of $500 for each count, but he may not for a first offense impose any sentence of imprisonment.

The trial court erred in overruling the motion for a new trial as to the defendant Byrd.

The trial court did not err in overruling the motion for a new trial as to the remaining defendants, but erred in entering up sentences of imprisonment as to each of the defendants.

*Judgment reversed as to the defendant Byrd and affirmed as to the other defendants, with direction that they be resentenced by the trial court in accordance with the ruling contained in division 9 of this opinion. Carlisle, Frankum, and Jordan, JJ., concur.*