## 52787. LEVERENZ v. THE STATE.

SMITH, Judge.

The defendant was convicted of violating the Georgia Securities Act of 1957. The relevant provisions of this Act make it unlawful to employ any device, scheme or artifice to defraud in connection with the sale of securities. The defendant appeals the judgment of conviction and sentence.

The defendant was the executive vice-president of Production 70's, Inc., a Georgia corporation; John Cater, a co-indictee, was the secretary. The corporation issued a

block of stock which sold for 25 cents per share. One hundred forty thousand shares of this issue were purchased by a William Tant, sales manager of the corporation. Mr. Tant later left the corporation. One hundred twelve thousand of his shares were then transferred to Audrey E. McGuire and registered in her maiden name, although she did not purchase the stock. Mrs. McGuire testified that she was told by the defendant and Mr. Cater that this stock was to be registered in her name so that it would be available for the salesmen to sell if the issue sold out. This stock was later sold to various persons in Whitfield County for 50 cents a share.

During this period of time, Mrs. McGuire opened a checking account in her own name. Most of the deposits into this account were checks made out to Production 70's. The checks were endorsed and given to Mrs. McGuire by the appellant. From time to time, Mrs. McGuire would write checks on this account and deliver either the check or the cash to the defendant.

Thereafter, an accounting firm audited the books of Production 70's, Inc. They determined that the corporate cash from the sale of stock was short approximately $21,000. The accounting firm would not certify an audit until the shortage was accounted for. An attorney with an expertise in securities was retained. He determined that the shortage of capital was caused by the sale of 25 cent stock for 50 cents a share. He advised that an amendment be made in the registration of 50 cent stock to reflect these additional sales of 50 cent stock. He also advised the defendant and Mr. Cater that the $21,160 would have to be repaid to the corporation. The attorney was subsequently given deposit slips by Mr. Cater which reflected payment of the necessary capital into the corporation. However, this money was actually the proceeds of a loan made by Mr. Cater. The loan was ultimately repaid by the corporation.

1. Appellant urges error in the trial court's refusal to grant a directed verdict of acquittal. The defendant was indicted under § 11 (b) of the Georgia Securities Act of 1957, which provides in pertinent part: "It shall be a fraudulent practice and it shall be unlawful: . . . (1) to employ any device, scheme or artifice to defraud, or (2) to

engage in any act, practice, transaction or course of business which operates or would operate as a fraud or deceit upon the purchaser *or* seller." (Emphasis supplied.) The indictment charged the defendant with employing a device, scheme and artifice to defraud the purchaser *and* seller. (Emphasis supplied.) Appellant contends that he was entitled to a directed verdict because there was no evidence to show that the *purchasers* of the stock were defrauded. He argues that the state was bound to prove the allegations as laid in the indictment. See *Hightower v. State,* 39 Ga. App. 674, 675 (148 SE 300).

This is not a case where the indictment stated the offense with unnecessary particularity as was the situation in *Hightower v. State,* supra. Rather, the indictment described two separate ways in which the crime could be committed; proof of either would constitute the crime with which the appellant was charged. "When a defendant is charged with the violation of a penal statute containing disjunctively several ways or methods a crime may be committed, proof of any one of which is sufficient to constitute the crime, the indictment, in order to be good as against a special demurrer, must charge such ways or methods conjunctively if it charges more than one of them. [Cits.] Accordingly, on the trial of a defendant under an indictment so charging, it is not incumbent upon the state to prove all of such separate ways or methods alleged in the indictment, but the state makes a prima facie case upon its establishment by proof of any one of them." *Jones v. State,* 75 Ga. App. 610(4) (44 SE2d 174). It follows that the trial court did not err in refusing to direct a verdict of acquittal where there was evidence that the appellant employed a scheme to defraud the *seller;* proof of this allegation was sufficient to constitute the crime of violating the Georgia Securities Act with which the defendant was charged.

2. Appellant argues that the state failed to prove that the defendant diverted corporate funds to his own use. We find that there was evidence which would authorize such a finding. The evidence shows that three persons purchased stock from a corporate employee and paid for the stock by check. These checks were deposited into an account listed in the name of Audrey McGuire.

Mrs. McGuire testified that she withdrew these funds and gave the cash or checks to the appellant.

An audit of the corporate books disclosed a capital shortage of approximately $20,000. The shortages were traced to insufficient deposits in relation to the 25 cent stock which was registered in the name of Audrey Elliott (Mrs. McGuire) and sold by the defendant and Mr. Cater, the co-indictee, at 50 cents a share. It was the checks from the purchasers of this stock which were deposited directly into the account of Mrs. McGuire rather than into the corporation. The corporate books did show deposit slips in relation to these sales in the name of A. McGuire or A. Elliott or Audrey McGuire or Elliott. However, the deposits were insufficient by approximately $20,000.

Although Mrs. McGuire testified that the funds went back into the corporation, there was no evidence as to how she concluded that the money was actually returned to the corporation. She gave the money to the defendant and his co-indictee for them to return to the corporation. Furthermore, the jury was not bound to accept her literal statements merely because such statements were not contradicted by direct evidence. "Implications inconsistent with the testimony may arise from proved facts; and in still other ways the question of what is the truth may remain as an issue of fact despite uncontradicted evidence in regard thereto." *Campbell v. Travelers Ins. Co.,* 100 Ga. App. 853, 854 (112 SE2d 311).

We find that the evidence authorized the jury to conclude that the defendant diverted corporate funds to his own use. It follows that the trial judge did not err in refusing to grant a directed verdict of acquittal on these grounds.

3. The defendant moved to quash the indictment, and the trial court overruled the motion. The appellant contends that this ruling was error because the indictment made "variant assertions" in that the indictment alleged in one part that only *a portion* of the proceeds of the sale of stock were diverted, and in another part that *all* of the proceeds was diverted. When the pertinent allegations of the indictment are read in context, it is obvious that the assertions are not inconsistent. The relevant portion of the indictment reads

as follows: "The accused caused to be transferred to Audrey I. Elliott certificate no. 261 which represented 112,000 shares of twenty five cent ($.25) Production 70's, Inc. stock for the purpose of subsequently selling said stock from that certificate at a higher price than twenty five cents ($.25) a share and diverting a portion of the proceeds of sale from Production 70's, Inc. to their own use. On or about March 22, 1972, in Whitfield County, Georgia, . . . Bobby H. Morrison purchased 3,000 shares of stock in said company at fifty cents ($.50) per share . . . The accused further caused the check for $1,500.00 drawn by Bobby H. Morrison to be deposited in a bank account listed in the name of Audrey I. McGuire, thereby diverting from Production 70's, Inc. the $1,500.00 investment made by Bobby H. Morrison."

The section of the indictment alleging a diversion of a "portion of the proceeds" refers to the sale of the 112,000 share block of stock which had been transferred to Audrey Elliott. Only a portion of the funds from the sale of this entire block were alleged to have been diverted. Whereas, the part of the indictment which alleges the diversion of *all* of the $1,500 investment refers to an individual sale of stock and the diversion of the purchaser's check in connection with this sale. We find nothing inconsistent in these two allegations in the indictment.

Appellant's enumeration of error is without merit.

4. The indictment was in three counts. Each count described a sale of stock to a particular individual and alleged that the proceeds from that sale were diverted by the defendant. The defense moved to quash the indictment on the grounds that only one scheme was employed, and therefore, the indictment alleges only one criminal violation in three counts. Section 11 of the Georgia Securities Act of 1957 makes it unlawful to *employ* a device, scheme or artifice to defraud in connection with the sale of securities. Each of the three separate counts alleged a different instance in which the scheme to defraud was employed. We find that each employment of the scheme was a separate crime and was properly charged in separate counts of the indictment. "[I]t *is the use* of the scheme, trick or *artifice with an intent to deceive* which is prohibited by the statute." *Curtis v.*

*State,* 102 Ga. App. 790, 797 (118 SE2d 264). Each use of the scheme is a criminal act. Accordingly, the indictment properly contained three counts. The trial court correctly overruled appellant's motion to quash based on this ground.

5. The defendant filed a plea to jurisdiction in which he contended that the venue did not lie in Whitfield County. The trial court overruled the plea to jurisdiction, and the appellant urges error in this ruling. Whitfield County is the place wherein the sale of the securities took place. The appellant argues that the diversion of funds did not occur until after the funds left Whitfield County and that venue properly lies in the county where the funds were actually diverted. We do not agree with appellant's argument.

As discussed in Division 4, the crime is the employment of a scheme to defraud. When the stock was sold as part of an overall scheme to defraud, this constituted an employment of the scheme. Thus, the crime was committed in Whitfield County, and venue does properly lie in that county. See generally, *Curtis v. State,* 102 Ga. App. 790 (8), supra; *Carter v. State,* 143 Ga. 632 (3) (85 SE 884).

6. Appellant contends that the trial court erred in charging the jury: "The sole question is whether or not there has been an intent formed, a wilful intent formed to defraud the seller of the stock." Considered in isolation from the remainder of the charge, this sentence would indeed appear to be error since the commission of the crime requires the *use* of the scheme with an intent to deceive. However, a charge must be reviewed in regard to the charge as a whole before it will constitute reversible error. *Hilton v. State,* 233 Ga. 11, 12 (209 SE2d 606). The pertinent portion of the charge is as follows: "I caution you again that you are not concerned with John Cater as a Defendant in this case, his case has been severed. You are concerned only with Mr. Leverenz. You are concerned only in this case as to whether or not there has been an intent to defraud the seller, that is Production 70's, of the stock involved in this case. There is no question about fraud in the purchase of the stock. The sole question is whether or not there has been an intent formed, a wilful

intent formed to defraud the seller of the stock."

From the context of the charge, it is clear that the judge was instructing the jury to limit their consideration of intent to the defrauding of the seller as opposed to the defrauding of the purchaser. The charge was not conflicting or confusing. Further, the charge as a whole made it clear that the jury must find the *use* of the scheme, device or artifice in addition to an intent to defraud before they could find the defendant guilty of the offense charged.

Although appellant urges other error in the above charge, his contentions are without merit for reasons discussed in other divisions of this opinion.

7. "There is no law in [Georgia] requiring the solicitor-general to read the indictment to the jury when qualifying them on their voir dire." *Patterson v. State,* 181 Ga. 698, 700 (184 SE 309).

8. An accountant testified regarding the auditing procedures used to determine that a shortage existed in the corporate capital. The appellant objected to this testimony; he contended that the best evidence of the accounting procedures would be the work sheets and documents of the accountants. The testimony pertained to the procedures used in the auditing of the corporate books; the essential fact sought to be proved was not the contents of a writing. The best evidence rule does not preclude admission of testimony where the essential fact to be proved is neither the existence nor the contents of a writing. *Mallette v. Mallette,* 220 Ga. 401 (2) (139 SE2d 322). The best evidence rule is not applicable to the testimony to which appellant objects; the trial court properly overruled the appellant's objection.

The state asked the same witness if he was satisfied with the results of the auditing test. The defendant objected to this testimony on the grounds that it called for a conclusion based on documents which were not in the record. The trial judge overruled this objection. The transcript shows that the corporate records upon which the accountant based his opinion testimony were either in the courtroom and accessible to the court and parties or were recreated and introduced into evidence. "When pertinent and essential facts can be ascertained only by

an examination of a large number of entries in books of account, an auditor or an expert accountant who has made an examination and analysis of the books and figures may testify as a witness and give summarized statements of what the books show as a result of his investigation, provided the books themselves are accessible to the court and the parties." *Bitting v. State,* 165 Ga. 55 (3) (139 SE 877). Appellant's enumeration of error is without merit.

9. Enumerations of error 8 and 11 pertain to exhibits which the court excluded from the evidence. We are unable to determine the content of these exhibits. "The judgment of a trial court will not be reversed because of a refusal to permit the introduction of written evidence, when the same is not set forth, either literally or in substance, with sufficient fullness to enable this court to determine whether or not its rejection resulted in injury to the plaintiff in error." *Shockley & Co. v. Morgan,* 103 Ga. 156 (4) (29 SE 694). Since we are unable to determine the content of the exhibits which were excluded from evidence, we cannot determine if their exclusion was harmful to appellant's case. "The duty is on the appellant not only to show error, but to show harmful error. Injury as well as error must affirmatively appear to obtain a reversal." *Barnes v. Cornett,* 134 Ga. App. 120, 122 (213 SE2d 703).

10. Agent Howell of the Georgia Secretary of State's office testified that he acquired various corporate records from the offices of Production 70's pursuant to a subpoena duces tecum from the Commissioner of Securities. He identified the records as those of Production 70's. He then testified regarding the contents of the records over the objection of defense counsel that the records were not properly authenticated. The defendant argued that the state had not established that the records were actually those of Production 70's. The trial court allowed the testimony but stated that he would take appropriate action if the state failed to "connect it up."

Later during the trial, all of the records from which the agent testified were introduced into evidence. They were either properly authenticated or introduced into evidence without objection. Thus, we find no harmful

error in the court's allowing the agent to testify regarding these documents over defense counsel's objection that they were not properly authenticated.

11. Appellant urges error in the court's allowing evidence regarding conduct of John Cater after the termination of the alleged scheme to defraud. Evidence was admitted to show that Cater took out a loan to satisfy the shortage discovered by the auditors in the capital of Production 70's; however, the loan was eventually repaid from corporate funds. The appellant argues that there was no showing that Cater's acts were agreed to or approved by the appellant; and therefore, this evidence should not have been admitted against the appellant.

There was sufficient evidence to establish a prima facie case of a conspiracy to defraud between the appellant and Cater, the co-indictee. Statements and conduct in concealment of a wrongful act as well as in perpetration or execution of the act are admissible against all conspirators. *Pressley v. State,* 205 Ga. 197, 205 (53 SE2d 106). Such evidence is admissible even though the other conspirator is tried separately. See *Davis v. State,* 129 Ga. App. 796, 802 (201 SE2d 345). The jury was authorized to find that Cater's activities in making a loan to repay the missing corporate capital were conduct in concealment of the conspiracy to defraud. Thus, the evidence regarding these activities was properly admitted against appellant.

*Judgment affirmed. Deen, P. J., and Webb, J., concur.*

ARGUED OCTOBER 4, 1976 — DECIDED NOVEMBER 19, 1976 — REHEARING DENIED DECEMBER 2, 1976.

*Garland, Nuckolls, Kadish, Cook & Weisensee, Edward T. M. Garland, John A. Nuckolls,* for appellant.

*Arthur K. Bolton, Attorney General, H. Andrew Owen, Jr., Special Assistant Attorney General, Robert S. Stubbs, II, Don A. Langham, Deputy Attorneys General, Samuel J. Brantley, District Attorney,* for appellee.