## 55292. BOWLER v. THE STATE.

SHULMAN, Judge.

Appellant and two others purchased a Georgia corporation, Fidelity Trust Company (hereinafter Fidelity). Fidelity then entered the investment securities field, selling investment certificates. It was in connection with the operation of Fidelity that appellant was tried and convicted on a four-count indictment charging him with violations of the Georgia Securities Act of 1957. Enumerated as error are the denial of appellant's motion for a directed verdict, denial of appellant's motion to dismiss for improper venue, and the trial court's action in sentencing appellant without a recommendation by the jury.

1. The basis for the motion for a directed verdict was appellant's contention that the state had failed to elicit sufficient evidence to authorize a guilty verdict on any count. The trial judge disagreed and so do we.

A. The first count of the indictment alleged a violation of § 3A of the Act (former Code Ann. § 97-104.1) in that appellant caused to be used an offering circular which was false and misleading in the light of the circumstances then existing. In particular, the state alleged that the prospectus represented that a particular individual, from whom Bowler and his associates purchased Fidelity, managed Fidelity when, in fact, appellant did; that the prospectus represented that the funds derived from the sale of investment certificates would be used to serve the mortgage needs of Atlanta when, in fact, the funds were diverted to banks in Virginia and substantial amounts were then loaned to a Virginia corporation controlled by appellant; that Fidelity was a prosperous company when, in fact, it had lost $24,000 in the last year; and that the prospectus guaranteed a specific profit on investment certificates when, in fact, appellant was aware that the Georgia Securities Act of 1973, which was to go into effect some four months after the sale of certificates began, would materially impair Fidelity's ability to meet its obligations to certificate holders.

The evidence showed that, although the person from

whom appellant and his associates bought Fidelity was listed as president of the corporation, she had no decision making power and was a figurehead for appellant, who ran the operation; that substantial amounts of money were sent to Virginia and loaned as alleged and that such a diversion was appellant's intent from the outset; that appellant knew before the offering circular was used that Fidelity had lost $24,000 in the preceding year, a substantial amount in light of its limited assets; and that the ability of Fidelity to meet its obligations was largely dependent on its ability to continue certificate sales after the effective date of the new securities law, which law, appellant was aware, would not permit the continuation of the operation as it was then structured. That evidence was sufficient to send the first count to the jury.

B. The state alleged in the second count of the indictment that appellant employed a device, scheme or artifice to defraud by guaranteeing a specified return on the investment certificates when he was diverting funds to bank accounts under his control in Virginia and lending in excess of $150,000 to a corporation there under his control, knowing that the Virginia corporation was a losing proposition which would be unable to repay the loan, thereby impairing the ability of Fidelity to make the promised redemption. The evidence showed that the loan was made as alleged and that it was due at a time after the maturity date of a large number of the certificates. That was sufficient to show that Fidelity's ability to repay was impaired by appellant's actions and that he knew it would be.

C. The third count alleged the employment of a device, scheme or artifice to defraud by guaranteeing a specified profit on investment certificates when Bowler had no reasonable expectation of realizing that profit because he caused the proceeds from the sale of certificates to be used to purchase common stock of a Virginia corporation which purchase he knew would decrease the value of the investment certificates. The evidence authorized a finding that Bowler was aware that the Virginia corporation, which was controlled by another Virginia corporation which was under Bowler's control, was in severe financial difficulty and would not be able to

provide a return on the investment in time for Fidelity to meet its obligations to certificate holders. The fact that Bowler and his associates later bought the stock from Fidelity does not change the fact that, during the time frame of the indictment, he caused the investment to be made, knowing it would impair Fidelity's ability to meet its obligations.

D. The final count of the indictment alleged fraud in that appellant caused the funds of Fidelity to be used in partial satisfaction of the debt he and his associates incurred in the purchase of Fidelity. One witness testified that the payments were made as alleged and that, although appellant and the others were billed for those payments, they did not repay them, so far as she knew. This testimony alone was sufficient to submit the issue to the jury.

Since the evidence on each count did not demand a verdict of acquittal, the motion for a directed verdict was properly denied. Code Ann. § 27-1802.

2. Appellant argues that, because he never went there or sent an agent there, venue does not lie in DeKalb County. However, the evidence is clear that part of the alleged scheme to defraud was to mail the offering circular and an application to prospective customers and, after receiving payment, to mail the certificate to the purchaser. There was evidence that the purchasers named in the indictment received such mailings in DeKalb County.

"[T]he crime is the employment of a scheme to defraud." *Leverenz v. State,* 140 Ga. App. 632, 637 (231 SE2d 513). Mailing the application to the purchasers in DeKalb County was an employment of the scheme. "The venue of a crime committed by mail is at the point where the matter transmitted by mail is delivered and takes effect." *Rose v. State,* 4 Ga. App. 588 (2c) (62 SE 117). *Rose* involved a solicitation to purchase liquor, mailed from Tennessee to a place in Georgia. The Georgia Supreme Court subsequently ruled that such a prosecution gave impermissible extraterritorial effect to a state criminal law. *R. M. Rose Co. v. State,* 133 Ga. 353 (65 SE 770). However, the reasoning of the Court of Appeals decision, as applied to intrastate dealings, is still viable. In

*Overcash v. State,* 111 Ga. App. 549 (142 SE2d 306), citing this court's opinion in *Rose v. State,* supra, it was held that venue in a case involving the use of vulgar words in a telephone conversation with a female would be in the county where the message was received. In that case, the conviction was reversed because it was not proved in which county the female resided.

In *Rose v. State,* supra, and *Overcash,* the crime was committed when and where an illegal communication was received. In the present case, the essence of the offense was the communication to prospective customers of representations known to appellant to be false. When the representations were communicated to persons in DeKalb County, the scheme to defraud was then and there employed. Therefore, venue was proper in DeKalb County.

For an alternative analysis, see *Carter v. State,* 143 Ga. 632 (3) (85 SE 884), where the Supreme Court utilized an agency theory which would produce the same result if applied here.

3. Following the jury's verdict of guilty, the trial court imposed sentence on appellant. That act is enumerated as error.

Former Code Ann. § 97-9901 (Ga. L. 1957, pp. 134, 161; 1959, pp. 89, 96), the penalty provision of the statute under which appellant was prosecuted, provided in pertinent part as follows: "Any person who shall wilfully violate any provision of Chapter 97-1, the Georgia Securities Act, or who shall engage in any act, practice or transaction declared by any provision of such Chapter to be unlawful shall be deemed guilty of a felony and upon conviction thereof shall be punished by a fine of not more than $5,000 or imprisonment for not less than one and not more than five years, or both, as the jury may recommend." Appellant asserts that the trial court's failure to submit the issue of punishment to the jury deprived him of a substantial right and demands reversal. We disagree.

Appellant's chief argument on this issue is based on the Supreme Court's opinion in *Winston v. State,* 186 Ga. 573 (198 SE 667). There, a statute passed after the commission of the offense took from the jury the power and

duty to fix the sentence and vested it in the trial judge. The offense involved was robbery by open force or violence and the punishment was death, unless the jury should recommend mercy, in which case the punishment was life imprisonment (the jury could also recommend less severe punishment). The Supreme Court held that the new statute was " . . . ex post facto and inoperative as to the offense charged against the accused, in that, if enforced, it would operate to withdraw a substantial protection which surrounded him at the time of the commission of the alleged offense, to wit, the right to a recommendation to mercy by the jury as a matter of grace, irrespective of the evidence or record. . ." Id. p. 575. As the Supreme Court later noted in *Todd v. State,* 228 Ga. 746, 749 (187 SE2d 831), ". . . in taking away the absolute recommendation of mercy by the jury as a matter of grace, it in. effect increased the sentence for robbery by force and violence. . ." In addition, *Todd* indicated that the statute involved in *Winston* took away the defendant's right to have his sentence determined by the unanimous agreement of twelve jurors.

We are not faced with that situation here. Former Code Ann. § 97-9901, unlike the penalty provision in *Winston,* did not involve multitiered sentencing ranges dependent on jury recommendations. The sentence here was within the parameters established by former (and present) Code Ann. § 97-9901. Appellant's sentence was not increased. Because, since 1971, no felony defendant has had an absolute right to be sentenced by a jury (*Cofer v. Hopper,* 233 Ga. 155, 157 (210 SE2d 678)), appellant has not been denied any substantial right.

" ' ". . . [A] statute is not [ex post facto] unless it materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offense was committed. And therefore it is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offense charged against him." ' [Cit.]" *Todd,* supra, p. 751.

Under these circumstances, we find no purpose which would be served by a new trial, even as to

sentencing.

*Judgment affirmed. Bell, C. J., and Birdsong, J., concur.*

ARGUED JANUARY 30, 1978 — DECIDED APRIL 10, 1978 —
CERT. APPLIED FOR.

*Garland, Nuckolls, Kadish, Cook & Weisensee, John A. Nuckolls, Frank J. Shannon, III,* for appellant.

*M. Randall Peek, District Attorney, Arthur K. Bolton, Attorney General, Andrew J. Ekonomou, Assistant Attorney General,* for appellee.